## WILLIAMS *v.* WALKER.

A solicitor or agent who is employed to procure the assignment of a bond and mortgage, or to invest money upon such securities, is not thereby authorized to receive either the principal or interest, when his client or constituent takes and retains the possession of the securities.

When in such cases, the solicitor or agent is expressly authorized to collect the interest, the debtor is not warranted in inferring that he is authorized to receive the principal debt.

The debtor is authorized to infer, that the solicitor or agent is empowered to receive both interest and principal, from his having possession of the bond and mortgage. So if he have the possession of the bond, without either the mortgage or the assignment.

But such inference being founded upon the custody of the securities, ceases whenever they are withdrawn by the creditor; and it is incumbent upon the debtor who makes payments to the solicitor or agent, relying upon such inference, to show that the securities were in his possession, on each occasion when the payments were made.

The authority thus implied from the possession of the securities, is not limited to a receipt of the whole principal in one sum. It is like the authority of an attorney employed to collect a debt, who may exercise a discretion as to receiving it in partial payments.

Where a solicitor who had effected a loan on bond and mortgage, received a part of the principal debt while he had the possession of the securities, and subsequently received the whole debt after they had been withdrawn from him, but never paid to the lender any part of the principal, though he continued to pay her interest on the entire sum, as if it were collected from time to time on the bond and mortgage; it was held that the payments of principal received by him while he held the securities were valid, and that those paid afterwards did not *impair the* bond and mortgage. And that the mortgagor was *not* entitled to be credited towards the debt, the interest which the solicitor paid out of his own funds to the lender previous to the discovery of his fraud, upon that portion of the principal which was discharged by the payments held to be valid.

Dec. 11, 1844, and Jan. 4, 1845; January 30, 1845.

THIS was a bill to foreclose a mortgage on a house and lot in the city of New York, executed by Joannah Walker to Isaac Halsey, together with her bond, to secure the sum of $1700, dated November 24th, 1832. The bond and mortgage were assigned by Halsey to the complainant on the 20th of May, 1833, after three hundred dollars of the principal had been paid and

indorsed. Notice of the assignment was at once given to Mrs. Walker.

The bill claimed that the remaining $1400 was due, with arrears of interest. The answer set up that the whole mortgage had been paid, both principal and interest, to Evert A. Bancker as agent for the complainant.

The defendant proved in evidence the receipts of Bancker, which showed the payment of the same to him in full. The first receipt for any part of the principal, was for $100, dated November 25th, 1835 ; and the last receipt dated November 23d, 1841, was for $114, which the receipt stated. was in full of the bond and mortgage, which he thereby engaged to have .cancelled and discharged. Between those dates, there were sixteen receipts given at different periods, on account of both principal and interest, for sums ranging from $30 to $300.

Bancker was examined as a witness for the defendant, and. testified, that in May, 1833, he became the complainant's solicitor and agent, and for several years invested her money and collected her interest. He made the investment in this bond and mortgage for her, and attended to the execution of the securities. He received the principal and interest in full, as shown by the receipts, but had not paid any of the principal to the complainant. He had no special authority from her to receive the principal, nor any express direction. The securities were delivered to her after the investment was made, and she resided in this city. Afterwards he had the bond in his possession for about eighteen months, during which time the first payment on account of principal was made to him, and two or three of the next succeeding payments. On one occasion when Mrs. Walker made a payment, he showed the bond to her. He considered himself authorized to receive the principal as well as the interest. The complainant from 1835 to 1837, was absent in Europe nearly two years, during which time the witness and Thomas W. Pearsall held a general power of attorney from her.

Mr. Pearsall, for the complainant, testified that Miss Williams went to Europe in the fall of 1836 and returned in the ensuing summer, during which time he was her agent and had the bond and mortgage in question, which he received from her previous

to her departure.   Bancker paid the interest on the whole $1400 secured by the bond and mortgage to the witness, down to February, 1842.

It appeared that he actually paid it till the year 1843.

*E. Sandford,* for the complainant.

*J. Lozier* and *W. K. Thorn,* for the defendant.

THE ASSISTANT VICE-CHANCELLOR.—Mrs. Walker has paid to E. A. Bancker the whole principal sum secured by this mortgage, and no part of it has been received by Miss Williams, to whom the mortgage belonged.   The money appears to be irretrievably lost, and the question is upon which of these parties must the loss be imposed.

It is contended on the part of Mrs. Walker that Bancker was the agent and solicitor of Miss Williams, and that Mrs. Walker was warranted by his apparent authority, in paying to him the principal, as well as the interest of the mortgage.

About the time when the mortgage was assigned to the complainant, Bancker became her solicitor to invest money for her, and to collect the interest on such investments.   He procured the assignment of this bond and mortgage for her, and paid her money to the mortgagee.   He never had any authority from her to receive the principal money or any part of it.   During her absence in Europe, in 1836-7, he and Mr. Pearsall were her general agents, by a written power of attorney : and no doubt were authorized to receive the principal, as well as interest upon her securities.   But this was a joint power, which Bancker could not exercise alone.

Aside from the joint authority to Pearsall and himself, it does not appear that he was at any time the general agent of the complainant.   Nor is there any course of dealing shown between her and Bancker, in reference to her securities or investments, from which the court can infer, or Mrs. Walker was entitled to assume, that he was authorized to receive the principal sums which he or others had invested for her.

The authority of Bancker (if there were any which can relieve

Mrs. Walker from this cruel loss,) must be derived from his capacity as solicitor for investing, and as agent for collecting the interest; and from the transactions in respect to this particular security.

Bancker's agency in these investments, was the same as that of a money scrivener in England. These scriveners are usually attorneys and solicitors. They look up investments, see to perfecting the securities, generally collect the interest, and are oftentimes intrusted with the possession of the securities and the receipt of the principal loaned.

The decisions upon this class of persons, in England, are therefore directly applicable to the case.

In this instance, the bond, mortgage and assignment were delivered to Miss Williams by Bancker, upon the loan being made.

Mr. Paley says that if money be due upon a written security, it is the duty of the debtor, if he pay it to an agent, to see that the person to whom he pays it is in possession of the security. For though the money may have been advanced through the medium of the agent, yet if the security do not remain in his possession, a payment to him will not discharge the debtor. And even the agent being usually employed in the receipt of money, does not in this instance, constitute such an authority as will secure the debtor. (Paley on Agency, by Lloyd, 274.)

Such has been the settled law of this court for a long period.

In *Henn* v. *Conisby*, 1 Cha. Ca. 93 ; S. C. 1 Eq. Ca. Abr. 145, pl. 1, (decided in 1668,) one Yarnay, a scrivener, lent out Conisby's money to the plaintiff on a mortgage and recognizance. Conisby kept the security. Four years after the loan was made, the plaintiff paid the principal and interest to Yarnay, who never paid it to Conisby, although he continued to pay the interest upon it. The general trust reposed in the scrivener, was there urged as making an authority for him to receive payment. On the other hand, it was said that the circumstance of Conisby's keeping the security was conclusive, and that no man would pay the money due on a mortgage and recognizance, or even on a bond, without having the security given up; and the plaintiff's payment to the scrivener, without having up his security, was an evidence that he trusted the scrivener more than Conisby did,

who always kept the security; and he that trusted most must be the sufferer. Sir O. Bridgman, Lord Keeper, decided that the payment to the scrivener did not discharge the debt.

In *Gerrard* v. *Baker*, cited in 1 Ch. Ca. 94; and also stated in 1 Eq. Ca. Abr. 145, pl. 2; the money was paid to one that usually received it for the obligee, yet the obligee not having trusted him with the bond, it was held no good payment.

. In *Roberts* v. *Matthews*, 1 Vern. 150, (A. D. 1682,) the defendant employed one Smith, a scrivener, to loan £50 for him, which Smith did to the plaintiff, on his bond to the defendant, and about three months afterwards, delivered the bond to the defendant. The plaintiff all along paid his interest to the scrivener, and about five years after giving the bond, on the scrivener's calling for it, paid to the scrivener £30, and took his receipt for it, as received for the defendant. Lord Chancellor Nottingham adjudged it to be a void payment, for the reason that the bond being in the custody of the defendant and not in the scrivener's, the plaintiff ought to have seen his money indorsed on the bond.

In *Wostenholm* v. *Davies*, Freem. Ch. R. 289 ; S. C. 2 Eq. Ca. Abr. 709, (A. D. 1705,) the plaintiff had borrowed £100 of the defendant's testator on bond, which was procured by Williams, a scrivener. The bond was taken by the obligee when it was executed. The plaintiff paid several years interest to Williams the scrivener, and £50, part of the principal money, which the scrivener paid to the obligee. The last £50 was also paid to the scrivener, who broke, without paying it to the obligee. The question was whether the plaintiff was to lose the money or the obligee. And Sir John Trever, the Master of the Rolls, said that it was the constant rule of this court, that if the party to whom the security was made, trusted his security in the hands of the scrivener, payment to the scrivener was good payment; but if he took the security into his own keeping, payment to the scrivener would not be good payment, unless it could be proved that the scrivener had authority from the party to receive it; and although in this case the scrivener had received the interest and part of the principal, and paid it to the obligee, yet that did not imply that he had any authority to receive it ; but as long as he paid it over, all was well, and any one else might have carried to the party as

well as he ; and the plaintiff not proving that the scrivener had any authority from the obligee to receive, he was forced to pay the last £50 again ; although the Master of the Rolls declared that he thought it a very hard case.

In *Curtis* v. *Drought*, 1 Molloy, 487, (A. D. 1828,) one Robert, who was the common agent of Margaret Bradford and T. Drought, in 1794, negotiated a loan of £300, belonging to Bradford, for which the bond of Drought was executed to her, and handed to Robert, who delivered it to her. The interest was regularly paid to her by Robert till 1816, when she died. Robert testified that he was commissioned by her generally, to lend her money as it came to his hands. He received the principal in 1810. The Chancellor held that it was no discharge of the bond.

He says, that "if one employs an agent to lend money and take a security, which he delivers to his principal, the agent has no authority to discharge the bond. No one would be safe, if an attorney who was employed to take a security for money could be permitted to say he had received back the amount, and discharged the debtor. There has often been a question touching the extent of the authority of an agent who has been permitted to hold the security in his hands, whether he had power to cancel the security and discharge the debt ; and there are some cases of great nicety upon that, (citing Prec. in Ch. 209.) But it has never been heard of, when the owner has had the precaution to take the instrument containing the evidence of the debt into his own custody, that the agent then had authority to receive the amount and give a valid acquittance."

These principles have been recognized in various other cases. (*Anonymous*, 16 Vin. Abr. 272, Payment, C. ; *Duchess of Cleveland* v. *Executors of Dashwood*, Freem. Ch. R. 249 ; *Whitlock* v. *Waltham*, 1 Salk. 157 ; S. C. 1 Eq. Ca. Abr. 145, pl. 4 ; *Penn* v. *Browne*, Freem. Ch. R. 214 ; and Mr. Raithby's Notes to 1 Vernon, 150.)

The case of *Whitlock* v. *Waltham*, just cited, shows that the receipt of the interest from time to time, not having possession of the bond, does not make out any authority to receive the principal.

And where the scrivener or agent for the loan retains the securities, and enters into an agreement to compound the debt, the obligee is not bound. (*Parrot* v. *Wells*, 2 Vern. 127; *Penn* v. *Browne, ubi supra.*)

In the Duchess of Cleveland's case, before cited, the payment to the scrivener was held good, on the ground that the money was made payable at his house; the bond and mortgage were left with him; and for all that appeared, they continued at his house until the payments were made.

Mr. Justice Story says that an agent authorized to take a bond is not to be deemed as of course entitled to receive payment of the money due under that bond. But if he is intrusted with the continued possession of the bond, an implication of such authority may be deduced from this fact, in connection with the other. (Story on Agency, § 98, 104.)

The only case which I have met with, that appears to conflict with this unbroken current of authority, is *Spencer* v. *Wilson*, 4 Munf. R. (Va.) 130. There a general agent had sold lands, and for a part of the purchase money had taken three bonds of the purchaser, and transmitted them to his principal. One of the bonds was subsequently returned to him by the principal for collection, and he received the amount of it, together with a part of one of the other bonds. The payment of the latter was held to be good. The case itself is either carelessly reported or was a loose decision. The only question in it which appears to have been argued at the bar, was that of the jurisdiction of equity to relieve after a judgment at law on the bond; and the decision upon that point was not in accordance with the law in this state or in England.

I feel perfectly clear upon the authorities as well as the reason of the thing, which has been sufficiently illustrated by my citations, that, previous to the time when Bancker obtained possession of the bond of Mrs. Walker, no payment of principal to him was valid to discharge the debt.

In the English cases, a distinction was taken and maintained between a bond or other security which might be cancelled by delivery to the debtor, and a mortgage whereby the estate passed, and upon which a release was requisite to reinstate the title.

And it was held, that although the scrivener possessed the mortgage, it would not empower him to receive more than the interest on the debt, whereas if he held a bond he might receive and discharge the principal. (*Martyn* v. *Kingsley*, Prec. in Ch. 209; *Whitlock* v. *Waltham*, 1 Salk. 157.)

In the Duchess of Cleveland's case, (Freeman, 249,) the Master of the Rolls, Sir John Trevor, held in conformity with this distinction; while Lord Keeper Wright was of the opinion that the scrivener holding the mortgage might well receive the prinpal debt.

In this state, where in equity the title is deemed to remain in the mortgagor, and the mortgage is regarded as a mere security which may be cancelled by delivery, without any deed or release; the reason given in the cases cited, for making a distinction between the receipts of a scrivener who has a bond and one who possesses a mortgage, is entirely inapplicable. And I have no doubt that the inference of authority from the possession of a mortgage by an agent should be as strong here, as that derived from the possession of a bond or other security.

In practice, the bond is with us the representative of the debt when it is accompanied with and secured by a mortgage. The payments made toward the debt are indorsed upon the bond. They are very seldom indorsed upon the mortgage.

Therefore in the case before me, while Bancker had the possession of the bond, although he had neither the mortgage nor the assignment, Mrs. Walker was, in my judgment, entitled to presume that he was authorized to receive the principal, as well as the interest on the bond and mortgage.

I do not think that the authority thus implied is to be limited to a receipt of the whole principal in one sum. The implication is, that the bond was left with him on the same footing as if it were left with an attorney for collection. In such a case, if any discretion is to be exercised as to the receipt of a part only of the debt, it is a discretion with which the agent is clothed by the possession of the security.

Before going to the payments made while Bancker had the bond, I will examine another point which is made by the defendant. She insists that Bancker having exhibited the bond to her

while he had it, thus proving his authority to receive payment of it, she was justified in continuing to pay to him until she had notice that the bond was withdrawn from his custody, or the authority otherwise revoked.

This point cannot be sustained. The authority is wholly unlike a general power, or a general direction to pay to the agent.

It rests entirely upon the fact of the possession of the bond. While that possession continued, the payments were justified, even if Mrs. Walker were ignorant of its continuance. Her safety required her on each occasion to look to the bond, the sole evidence then of this special authority; and to see that her payments were properly indorsed. If she chose to pay without this caution, it did not impair the validity of the payments, while the special authority in fact continued; but the moment the bond was withdrawn, her payments thus improvidently made, wrought no discharge of the debt.

She was then reposing a confidence in Bancker which Miss Williams was unwilling to accord to him, and the loss that ensued must devolve upon Mrs. Walker.

In *Baldwin* v. *Billingsley*, (2 Vern. 582 ; S. C. 1 Eq. Ca. Abr. 146, pl. 5,) a bequest of £200 had been made to Phillips and Parker, trustees, in trust for the separate use of Mrs. Billingsley. The money was lent to Baldwin and a bond taken in the name of the trustees, and by them delivered to Billingsley, who always kept it. Parker collected £100 for Baldwin and gave him a receipt for it on account of the bond. Lord Keeper Wright held it was no payment. He said Parker might have received the money and applied it, if he had been in possession of the bond; and that the payment to Parker by Baldwin, *without seeing the bond*, was not a good payment.

This view of the subject appears to be sanctioned by Judge Story, who reposes the implication of the authority upon the *continued possession* of the bond. (Story on Agency, § 98.)

I am compelled by my conclusion as to the law, to allow Mrs. Walker only those payments of principal which she made during the time Bancker had possession of the bond.

He testifies that he had the bond when he received the first

payment of principal, and that it was in his possession about eighteen months.

He connects it also with Miss Williams's absence in Europe, whence she returned, according to Mr. Pearsall's testimony, in the summer of 1837. Bancker also says there were two or three other payments of principal made while he had the bond.

Assuming that there were three others made, the principal paid during that time was $356, in four payments, extending from November 25th, 1835, to July 13th, 1837.

Mrs. Walker must be credited for these four payments of principal; and the mortgage must be declared a valid lien for the residue.

This is a case of great and peculiar hardship to Mrs. Walker; one which I would gladly have relieved against, were it possible, consistent with the maintenance of sound and important rules of equity; and with dispensing exact justice to the equally innocent creditor. The fraud and iniquity of Bancker is the more odious and reprehensible, that it was practised upon two confiding women. This fraud the court cannot avert or repair, and the loss must be disposed of according to settled rules of law; whether one or the other of the sufferers be the best able to abide its consequences.

As to costs, the complainant claimed that the whole principal was due. This is not sustained, and I will limit the complainant's cost to the amount which she would have recovered on the bill taken as confessed.

*Mr. Thorn,* for the defendant, on the decision being pronounced, urged that on the principles declared by the court, the principal sum in the mortgage ought to be further reduced, by having applied thereto the interest which Bancker paid to Miss Williams from time to time on the $356 of principal which he had collected and withheld from her.

*Mr. Sandford,* contra, insisted that such payments of interest were made by Bancker from his own funds, on a debt which by the decision was due from him to Miss Williams.

THE ASSISTANT VICE-CHANCELLOR.—I do not perceive any equitable ground for this claim. Mrs. Walker paid no such interest. She paid to Bancker *interest on the* $1044 balance of the principal, and she also paid to him divers sums *as principal,* which he obtained from her by fraud. In respect of these sums, *he was her agent* and not Miss W.'s He was a faithless agent, and Mrs. W. had an action against him for the money thus paid. So in respect of the $356 paid for principal, while he had the bond, *he was Miss W.'s agent.* He was faithless to her in pocketing that money, and she had her remedy or action for the amount. But both Mrs. W. and Miss Williams were at the time ignorant of his fraud and of their respective legal rights and injuries growing out of it.

Then take the payment of interest in November, 1837, it being the first after the sum of $356 was paid.

Bancker paid to Miss W. the six months interest on $1400. It was all due to her, and she received it as interest, supposing that it all came from Mrs. W. In fact only the interest on $1044 was paid by Mrs. W. The residue was paid by Bancker himself, who was then the debtor to Miss W. for the remaining $356. Thus Miss W. although ignorant that Bancker was her debtor for that sum, actually received the interest that was her due, from the identical person who owed it to her.

Now the fact that at that time, Bancker was the debtor of Mrs. Walker, in the small payment of principal erroneously made to him in September before, and she was the debtor to Miss W. for principal on the same mortgage, furnishes no plausible reason for depriving Miss W. of the payment that Bancker made to her upon his debt to her, and bestowing the same upon Mrs. W. by a forced credit to her for principal with Miss W.

It would be compelling Miss W. to lose what her agent, (in respect of the $356,) rightfully paid to her upon his debt; and giving the benefit of it to Mrs. Walker because Bancker as the agent of the latter, (in respect of the principal paid after July, 1837,) had wrongfully omitted to pay over the monies with which she had intrusted him.

The form of the credit upon the bond, is in favor of Miss W. It is indorsed as paid *for interest.* It was due for interest; and

it cannot affect her right to it that she was ignorant from whom it was due, so long as she received it from the actual debtor.

In this result, Mrs. W. is credited for the payments of principal, *at the time they were made.* She has paid no interest on them since, and none is awarded against her.

On the principal claimed in her behalf, she would be entitled to have credited to her, the payments made to Miss W. for interest by Bancker, after Mrs. W. had paid Bancker the whole bond, and was no longer making payments of either principal or interest.

Decree accordingly.