ALAMANSON M. MATTESON v. JOHN R. BLACKMER, STEPHEN W. DUNCOMBE, ADMINISTRATOR, ET AL.

*Mortgage—Proof of delivery—Loan agent—Bonus on loan—Notice of prior lien—Land-poor—Affirmance of decree in doubtful cases.*

Where a mortgager testifies in general terms that he *gave* the mortgage at a specified time, and is not questioned as to the particulars of delivery, this testimony must be regarded as showing *delivery* at that time.

A complainant in foreclosure desired to show that the mortgage held by him was delivered and recorded before another one of previous date held by a person who had died before the suit was begun; and he sought to show it by the testimony of a witness who claimed the decedent had told him his mortgage was neither acknowledged nor delivered until the other was put on record. The witness had lived five or six miles from decedent, and was not shown to have been his confidant. Complainant had a mortgage on the lands of the witness. *Held* a suspicious circumstance that he had never mentioned his conversation with decedent in the latter's lifetime, nor until after complainant's suit had been pending seven years, and until complainant had called upon him, just before he was sworn, to know if he was possessed of valuable information.

Where a son acts for his father in procuring a mortgage, undertakes the whole negotiation, decides upon the security, satisfies himself as to the title, attends to the execution of the papers, receives the money from his father and pays it over to the mortgager,—in short does every thing an agent could do, and his father accepts the benefits of the transaction, he may properly be regarded as his father's agent in spite

of his testimony to the contrary, especially if he admits being his agent just before and just after these acts; it is idle under such circumstances for him to claim to have been agent for the person giving the mortgage.

Extortion of a *bonus* from the borrower of money is too common a procedure on the part of the lender's agent, to be very significant for the purpose of showing that he was the borrower's agent rather than the lender's.

The fact that the value of land is not enough to secure two loans is significant, but not conclusive, evidence that the second mortgagee had notice of the prior lien.

"Land-poor" is understood to mean that one has a great deal of unproductive land, and perhaps that he has to borrow money to pay taxes. But a man land-poor may still be responsible.

A decree may be affirmed where the appellate court is not satisfied that the trial judge was in error in his findings as to the preponderance of testimony.

Appeal from Van Buren. Submitted June 17. Decided June 29.

Bill of foreclosure. Complainant appeals. Affirmed.

*Dallas Boudeman* for complainant.

*Benjamin F. Heckert* for defendant Duncombe. When the mortgager and mortgagee have the same agent his knowledge is notice to both: 1 Jones Mortgages § 588; *Losey v. Simpson* 11 N. J. Eq. 246; *Astor v. Wells* 4 Wheat. 466; *Jamison v. Gjemenson* 10 Wis. 411; delivery of a mortgage in an incomplete condition is good at common law and subsequent mortgagees will be bound by notice thereof: *Reynolds v. Darling* 42 Barb. 418; *Van Court v. Moore* 26 Mo. 92; *Thompson v. Leach* 2 Vent. 200; *Hammond v. Warfield* 2 Har. & J. 151: 15 Amer. Dec. 246.

Cooley, J. This is a bill to foreclose a mortgage given by the defendant John R. Blackmer and his wife to the complainant, bearing date February 17, 1869, and recorded in March following. Stephen W. Duncombe as administrator of the estate of Hezekiah Selleck deceased, is joined as a defendant under the general allegation that said Selleck

. was a subsequent encumbrancer. No contest is made respecting the mortgage held by complainant, and the litigation has. concerned the Selleck mortgage exclusively. That mort-. gage bears date January 13, 1868, but was neither acknowledged nor recorded until after the recording of the Matteson mortgage. It is claimed by Duncombe, however, that the Selleck mortgage was made and delivered at the time of its date, and that complainant, through Milo D. Matteson his. agent, was notified of its existence when the mortgage in suit was taken.

The points contested in this case are—*First*, whether the Selleck mortgage was made and delivered before the Matteson mortgage; *second*, whether Milo D. Matteson was the agent of complainant in taking the mortgage now in suit; and *third*, whether, if he was agent, he had notice of the existence of the Selleck mortgage when negotiating for and receiving the other.

On the first point the testimony of the mortgagor is positive that the Selleck mortgage was given when it bears date. On the evidence there seems to be no ground for questioning the fact of its being then made, upon a consideration of money previously loaned. What is disputed is, that it was then delivered. Blackmer testifies that it was handed to a notary to take into the country, where he resided, in order to have his wife sign and acknowledge it, but that this was delayed a long time, until finally it became necessary to employ another. Complainant's counsel insists that there is no evidence of the delivery of this mortgage until the time of acknowledgment; and it is true that Blackmer does not expressly testify that he delivered it. He however testifies in general terms to giving the mortgage to Selleck in January, 1868, and as neither party saw fit to question him respecting the particulars of delivery, this must be deemed sufficient. An attempt is made to overcome his testimony by that of one Coneley, who swears to having been told by Selleck in 1869 or 1870 that Blackmer had given him a mortgage, but never acknowledged nor delivered it "until the other mortgage was given and put on record." It is a very suspicious

circumstance that the witness never mentioned this conversation to any one in the life-time of Selleck, nor until after this suit had been pending for seven years, nor until Milo D. Matteson called upon him just before he was sworn to ascertain if he was possessed of valuable information. Why Matteson should direct the inquiry to him does not appear. Coneley lived five or six miles from Selleck in the life-time of the latter, and no circumstance is stated that would have been likely to make him the confidant of Selleck. We do not place much reliance on this evidence, especially as Matteson appears to have a mortgage on the lands of the witness. We do not think it overcomes the testimony of Blackmer.

That Milo D. Matteson was not the agent of complainant in taking the mortgage in suit is sworn to positively by him, but nevertheless we think his testimony establishes the fact. The complainant is his father, and Milo swears that he was his father's agent in the business of loaning money until a short time before this mortgage was taken. His father was boarding him for what service he rendered, and he refused to work longer without better compensation. Nevertheless he took up the work again almost immediately after this mortgage was taken; so that he was indisputably the agent just before and just after the transaction. In this transaction he claims to have been agent for Mr. Blackmer in obtaining a loan for him; but giving full effect to all his statements of fact, it is perfectly evident he was agent for his father in this matter as much as at other times. It may be that he was not under pay at the time; but if so he performed a voluntary service of which his father accepted the benefit. Milo took upon himself the whole negotiation, decided upon the security, satisfied himself respecting the title, attended to the execution of the papers, received the money from his father and paid it over to Blackmer; in short did everything there was for an agent to do in the matter, and as much as any agent could ever have done in a similar negotiation. Complainant never appeared in the transaction at all, except as he handed over the money to Milo; and it is idle for Milo to testify that under such cir-

cumstances he was agent for Blackmer. It is true he succeeded in extorting from Blackmer a large bonus; but that has been altogether too common a procedure for the agents of money lenders to have significance on this question.

On the question of notice of the other mortgage Blackmer and Milo D. Matteson contradict each other. Complainant insists that Milo's testimony is most credible, because the value of the land at the time was scarcely sufficient to secure both debts. This is a circumstance deserving attention; but it is not conclusive. Blackmer gave a note with the mortgage, and it does not appear he was considered irresponsible. Milo says Blackmer "had a good many pieces of land: he was land-poor." By this is generally understood that a man has a great deal of unproductive land, and perhaps is obliged to borrow money to pay taxes; but a man "land-poor" may be largely responsible. It is noticeable that this record shows no negotiation in respect to the land to be pledged; and we find nothing to indicate that the personal responsibility was not considered the chief reliance. But without discussing the evidence it is sufficient to say that the circuit judge found a preponderance of testimony in favor of the notice; and we are not satisfied that he was in error. The decree, which postponed the mortgage of complainant to that given to Selleck, will therefore be affirmed with costs.

The other Justices concurred.