[No. 2003.   Decided March 9, 1896.]

.THE WESTERN SECURITY COMPANY, *Appellant*, v. ROBERT H. DOUGLASS *et al.*, *Respondents*.

AGENCY — AUTHORITY TO RECEIVE PAYMENT.

An agent to negotiate a mortgage loan has no implied authority to receive payment of the mortgage, where he is not in possession of the mortgage or of the principal or interest notes, and that fact is known to the party making the payment.

Parties dealing with an agent cannot rely upon his assumption of authority, but are bound to ascertain the fact.

The authority of an agent cannot be established by his own declarations.

Appeal from Superior Court, Stevens County — Hon. NORMAN BUCK, Judge. Reversed.

*Richardson & Williams*, for appellant.

*Nash & Nash*, for respondents.

The opinion of the court was delivered by

GORDON, J.—This action was brought to foreclose a

mortgage on real estate, and the sole defense relied upon is that of payment. The lower court having found in favor of the respondents (defendants below), the cause comes here upon appeal.

It appears that the mortgage was given March 1, 1888, to secure a loan of $400, and was negotiated through the instrumentality of one Jacob Stitzel, a real estate agent and loan broker at Colville, on the basis of ten per cent. interest, and was due and payable March 1, 1893. Both principal and interest were payable, by the terms of the notes, at the office of the Eastern Banking Company, Boston, Massachusetts. It further appears that on different occasions thereafter the respondent Douglass made his interest payments to Stitzel, who was accustomed to receive them as well as similar payments from other borrowers, and remit them to Boston, receiving the several interest coupon notes in return. It further appears that in June, 1891, said respondent made arrangements with his co-respondent Hughson for obtaining a larger loan upon his farm security, and on the 26th day of that month Douglass and Hughson went to the office of Stitzel who, at their request, prepared the papers, including a mortgage upon the land in question from Douglass to Hughson, securing a loan of $1,200. This money was to be used in paying and discharging appellant's mortgage and certain other indebtedness of respondent Douglass, so that the mortgage from Douglass to Hughson should become a first lien. This sum of $1,200 was paid by Hughson to Stitzel at that time, and by Stitzel credited to the account of Douglass, and on the same day, at the request of respondents, Stitzel wrote to the Eastern Banking Company of Boston, for the purpose of ascertaining the amount that would be required to pay and discharge

appellant's mortgage, and requesting that respondent Douglass should be permitted to pay the mortgage indebtedness, although by its terms the same was not due or payable until March 1, 1893. On the same day Stitzel paid and discharged a judgment against respondent Douglass, amounting to the sum of $535. On the 30th of June, the Eastern Banking Company wrote said Stitzel the following letter:

"We have your favor of the 22d inst. with reference to loan 3,678, R. H. Douglass, in which January 1, 1891, payment is in default. In reply we have to say that under the circumstances we can obtain releases in this case on the terms you proposed, that is principal and interest to date and balance of the second mortgage. This would make the amount to send provided the funds reach this office by July 10th, as follows:

| | |
|---|---:|
| Principal | $400 00 |
| January 1, 1891, payment | 40 00 |
| Interest thereon | 2 11 |
| Interest on principal to July 10 | 14 78 |
| Balance second mortgage | 26 00 |
| Total | $482 89 |

"In case the borrower cannot pay at once please advise us how soon the funds may be expected."

This letter reached Stitzel on July 5th, and on the same day, out of the funds remaining in his hands to the credit of Douglass (being the unexpended balance of the $1,200 received on the Hughson mortgage), he procured from the Stevens County Bank a draft upon the Chase National Bank of New York for the amount, and mailed it to said banking company. On July 16, thereafter, the draft was presented for payment and protested, the Stevens County Bank having failed. It also appears that the draft never has been paid, but was returned to Stitzel.

The question for determination here is whether

under the circumstances of the case, this constituted a payment of the mortgage indebtedness. There is no direct proof of the authority upon the part of Stitzel to receive the money, nor do we think that the testimony was sufficient to raise any implied authority. The question of agency becomes one of fact and is to be determined from the evidence in the case. Giving respondents the benefit of all conflicting testimony where a conflict occurs, it nevertheless must be concluded that the authority of Stitzel to receive the money as a payment is not established. A great deal of testimony was introduced upon the trial tending to show that Stitzel held himself out as the agent of plaintiff and of the Eastern Banking Company, through which latter corporation it appears the loan was really effected, for the purpose of negotiating loans in that section of country; that various farm loans were negotiated by Stitzel through said Eastern Banking Company and that from time to time the interest payments upon such loans were made by the borrowers to Stitzel. It does not appear, however, that Stitzel was ever intrusted with the possession of any of the interest coupon notes or of the principal notes, prior to the receipt by the company at Boston of the amounts forwarded by him to pay them; and in the case of the respondent Douglass it appears not only that Stitzel was not in possession of the notes and mortgage in question on June 26, 1891, but that respondents knew that he did not have them in his possession. It also appears that sometime after the protested draft was returned, the respondent Douglass through Stitzel, presented a verified claim based upon said protested draft to the assignee of the bank, for payment. It is true that the testimony shows that he was persuaded and influenced by Stitzel to do so.

Further, it appears that on December 10, 1891, the respondents, being threatened by appellant with fore-closure proceedings, paid the interest then delinquent upon said loan, amounting to $85, and that this was done with full knowledge of the fact that the draft had been protested and that the plaintiff, was disclaim-ing any responsibility for the conduct of Stitzel in re-ceiving the money and forwarding the draft.

Counsel for the respondents confidently cites the cases of *New England Mortgage Security Co. v. Addison*, 15 Neb. 335 (18 N. W. 76), and *Matteson v. Blackmer*, 46 Mich. 393 (9 N. W. 445), which cases he insists are " singularly like this one in all its details and features." But we think otherwise. The sole question in either of those cases was whether the agent negotiating the loan was to be held as the agent of the borrower or of the lender. Neither of these cases is applicable here, because if we assume that Stitzel *was* the agent of the appellant and of the Eastern Banking Company for the purpose of making the loan, it does not follow that he was authorized to receive payment.

" The mere fact that the agent was employed to make or negotiate the contract will not, as of course, confer upon him the incidental authority to receive a payment which may become due upon such contract." Mechem, Agency, § 372.

A case in point which is cited perhaps oftener than any other is that of *Williams v. Walker*, 2 Sand. Ch. 325, where it is held that:

"A solicitor or agent who is employed to procure the assignment of a bond and mortgage, or to invest money upon such securities, is not thereby authorized to receive either the principal or interest, when his client or constituent *takes and retains the possession of the securities.*"

It is familiar law that one dealing with an agent is bound to know his authority. In the present case the respondents knew that Stitzel did not have possession of the notes or mortgage.

" Where an agent has the possession of a promissory note after due, it may be inferred that he has authority to receive payment of it, but the burthen is on the debtor who makes payment to the agent, relying upon such inference, to show that the note was in his possession when the payment was made." *Stiger v. Bent*, 111 Ill. 328.

The rule seems to be well settled that:

" If a debtor, owing money on a written security, pays to or settles with another as agent, it is his duty, at his peril, to see that the person thus paid or settled with is *in possession of the securities*. If not in possession the debtor must show that the person to whom he made the payment, or with whom he made the settlement, had special authority, or had been represented by the creditor to have such authority." *Tappan v. Morseman*, 18 Iowa, 499.

Mechem, Agency, § 373; *Haines v. Pohlmann*, 25 N. J. Eq., 179; *Eaton v. Knowles*, 61 Mich. 625 (28 N. W. 740); *Lane v. Duchac*, 73 Wis. 646 (41 N. W. 962); *Garrels v. Morton*, 26 Ill. App. 433; *Smith v. Kidd*, 68 N. Y. 130 (23 Am. Rep. 157).

In this case $1,200 was left with Stitzel for the purpose of paying appellant's mortgage, and also paying certain other liens and judgments, but the respondents were bound to know that Stitzel did not have possession of the note, or authority to discharge the mortgage; that by their terms the notes and mortgages were payable at a particular place in Boston; that the same would not mature for nearly two years thereafter, and that arrangements would have to be made with the holder of the securities, permitting

their payment before maturity. We are not satisfied from the record that Stitzel made any representations as to his authority, but supposing that he did, the respondents were bound to know the extent of his authority from other sources. It is too well settled in the law to permit of any controversy or question, that the authority of the agent cannot be shown by his own declarations. Let us suppose that after this money was so deposited with Stitzel, and prior to the time of forwarding the draft, the respondents had concluded to withdraw it. Would it be contended that they would not have had that right? It seems clear to us that the entire sum was within their control until it had been actually disbursed by Stitzel pursuant to the directions given him by the respondents. Hence, as to said sum of $1,200, Stitzel became the agent of the respondents rather than of the appellant.

We conclude that the testimony was wholly insufficient to sustain the plea of payment, and that the lower court should have found for appellant.

The judgment will therefore be reversed and the cause remanded with directions to enter a decree in its favor.

HOYT, C. J., and ANDERS and SCOTT, JJ., concur.

DUNBAR, J., dissents.