[No. 19475.  Department One.  April 5, 1926.]

Adolf L. Bjorkstam *et al., Appellants and Respond-*
*ents,* v. Federal Land Bank of Spokane, *Respond-*
*ent,* W. H. Stewart *et al., Appellants.*[1]

[1] Mortgages (57)—Priorities Between Mortgages. Where both
parties to a mortgage agreed that it may be satisfied for the pur-
pose of procuring a Federal loan for part of the sum, the mort-
gagee to take the money raised and a second mortgage for the
balance, the new mortgage loan must, as between the parties,
be given priority, regardless of the knowledge of the new mort-
gagee.

[2] Principal and Agent (35)—Estoppel (36)—Clothing Another
With Apparent Authority—Collection of Debts Due Principal.
A public agent of a Federal loan association, authorized to re-
ceive applications for Federal loans, who also acts as an inter-
mediary between negotiating parties and receives the present
mortgage securities and a satisfaction for the purpose of receiv-
ing the Federal loan money and delivering up the securities, be-
comes the agent of the owner of such money and securities,
upon his default and embezzlement of the money after delivering
the securities, and the owner must sustain the loss as the one
of two innocent parties whose act made the loss possible.

Cross appeals from a judgment of the superior court
for King county, Honorable Charles E. Claypool, judge
*pro tempore,* entered April 16, 1925, upon findings in
favor of defendant Bank, in an action to determine the
priority of mortgages.  Affirmed in part and reversed
in part.

*Riddell & Brackett,* for appellants Bjorkstam.
*J. H. Templeton,* for appellants Stewart.
*J. Speed Smith, Henry Elliott, Jr.,* and *Henry R.
Newton,* for respondent Federal Land Bank of Spo-
kane.

Holcomb, J.—Owing to the complicated appeals in
this case, for the sake of brevity, the parties will be

[1]Reported in 244 Pac. 981.

called plaintiffs and defendant, respectively, except the Federal Land Bank of Spokane, which will be called respondent.  Originally, the plaintiffs consisted of husband and wife, but the wife having died, and her interests having passed solely to her husband, he was substituted as sole party plaintiff, and will be so designated herein.

The complaint of plaintiffs alleges that the Federal Land Bank of Spokane is a corporation, organized under the act of Congress, and that it has its principal place of business at Spokane, Washington; that it is engaged in loaning money on farm lands in the state of Washington; that one Montcrieffe Cameron, at all times in question, was an attorney at law practicing in Seattle, and was secretary-treasurer of the Seattle National Farm Loan Association, a corporation, organized and existing under an act of Congress; that, by virtue of his office, Cameron was the agent of respondent bank for the purpose of receiving applications for loans under the act, and for the purpose of disbursing funds advanced by the bank.

It is further alleged that, on October 21, 1923, and for many years prior thereto, plaintiff and his now deceased wife were the owners of the land in question; that upon that day they sold and conveyed the lands to defendants Stewart and wife, for the agreed purchase price of $5,500, of which plaintiffs received in cash the sum of $1,250, and a note and mortgage representing the remainder of the purchase price, of $4,250, due six months after date; that, at the time of making the conveyance referred to, plaintiffs entered into a written contract with defendants Stewart, which is attached to and made a part of the complaint, marked Exhibit "A," by which it is recited that Stewart and wife, having applied for a farm loan on the premises with

which to pay off the $4,250 mortgage held by plaintiffs, in the event the farm loan be granted, plaintiffs upon receiving $3,000 would release the mortgage and take a second mortgage in the sum of $1,250, due in one year; that on December 26, 1923, plaintiff was notified by Cameron that the application of Stewart for a loan had been accepted, and he was requested to call upon Cameron and satisfy the mortgage; that pursuant to such request, and relying upon the assurance of Cameron, as agent of respondent bank, that plaintiff would receive the sum of $3,000 out of the proceeds of the Federal farm loan, plaintiff executed and delivered to Cameron a satisfaction of his $4,250 mortgage, and surrendered to Cameron his note; that thereafter the loan was made by respondent bank and the proceeds thereof sent to Cameron for disbursement; that Cameron failed to pay plaintiff the $3,000 due him from the Federal farm loan, but converted it to his own use; that demand has heretofore been made upon Cameron, as agent of respondent bank, and upon the defendants Stewart, which has been refused; that the bank caused its mortgage in the sum of $4,250 to be placed of record, purporting to be a first and prior lien upon the lands in question; that in justice and equity respondent's mortgage should be held to be inferior and subsequent to the lien in favor of plaintiff for the sum of $3,000, and interest. Plaintiff therefore demanded that the original note and mortgage of defendants Stewart, in the sum of $4,250, with interest, be reinstated as a first and prior charge upon the lands involved, and that a decree be entered foreclosing the same, and that the plaintiff have and recover other equitable relief.

The answer of respondent bank was a general denial of the allegations of the complaint respecting the agency of Cameron and the alleged acts of Cameron and Stewarts.

The answer of defendants Stewart admits the conveyance and the giving of the mortgage mentioned in the complaint; alleges that defendants have performed the obligations of their contract, Exhibit "A;" that they now hold possession of the lands in question subject to a $4,250 mortgage in favor of the Federal Land Bank, and subject to a second mortgage of $1,250 in favor of plaintiffs.

At the conclusion of the trial, the court entered a decree dismissing plaintiff's cause of action against the Federal Land Bank, reinstating the original mortgage in the sum of $4,250, executed by defendants Stewart to plaintiff, and foreclosing the same, subject, however, to the prior lien of the mortgage held by the Federal Land Bank, the effect of which decree is to reinstate plaintiff's mortgage, but making it subject to a prior charge in favor of respondent in the sum of $4,250.

The defendants Stewart have appealed from the decree against them in favor of plaintiff. The plaintiff has appealed from so much of the decree as dismisses his cause of action against the respondent bank.

The facts are not disputed, but the deductions to be drawn from them and the legal effect to be concluded therefrom are in very great dispute.

We are beset with some difficulty to determine whose agent Cameron was, in respect to the transaction involved in his misappropriation of the funds borrowed from respondent bank by defendants Stewart, in part for the purpose of paying the $3,000 to plaintiff. Respondent bank denies that Cameron was its agent; plaintiff strenuously contends that Cameron was the bank's agent, while defendants contend that Cameron was either the agent of the bank or of plaintiff.

While the facts are not disputed, except as to the deductions and conclusions to be derived therefrom, it

will be necessary to make a very lengthy and detailed statement of the facts in order to understand the matter at issue and determine the law.

It may be well to premise the statement of facts by a glance at the statutory relations of respondent and another agency with borrowers of Federal farm loan funds.

The Federal Farm Loan Act, as it is called, and its various amendments (U. S. Comp. Stat. 1925, Cumulative Supplement, Compact Ed., § 9835-B, *et seq.*) creates three separate agencies with distinct and independent functions:

(1) The Federal Farm Loan Board, consisting of seven members, at the head of which, *ex officio,* is the Secretary of the Treasury, which is given general supervision over the administration of the act.

(2) The Federal Land Banks, which are separate and independent corporations obtaining their charters from the Federal Farm Loan Board, and having such powers only as are granted them by the act. They report to the Federal Farm Loan Board, and are, at all times, subject to its supervision and regulation. They are given no power of supervision or regulation over farm loan associations, other than to recommend to the board for or against an application of these associations for the granting of their charters.

(3) The National Farm Loan Associations, which are authorized to be created by ten or more persons who own farm lands qualified for loans under the act. The application for a charter as a National Farm Loan Association, which, as appears from its nature as above stated, is purely a local association, is sent to the Federal Land Bank in that district in which the association attempts to be organized, and is forwarded by the bank to the Federal Farm Loan Board, with its

recommendation. If granted, the board issues a charter to the association which becomes, under the act, a separate corporation with the powers enumerated in the act, and subject to the limitations and restrictions prescribed therein. The principal functions of these local associations is to receive applications from the owners of qualified lands for loans, which applications are thereupon forwarded to the land bank of that district. Applicants for farm loans are all required to become members of the association and subscribers to its capital stock. Each association elects its own board of directors, each member or borrower of a farm loan having a voice in the selection. This board of directors in turn chooses the officers of the company, including a secretary-treasurer, who is the only paid officer of this corporation. His compensation is determined by the board of directors, and he is paid from the funds of the association. The act provides that it is his duty to act as custodian of the funds of the association, and that he must deposit the same in such bank as the directors may direct; to pay over to borrowers all sums received for their accounts from the Federal Land Bank upon first mortgages, and to meet all other obligations of the association, in accordance with the by-laws of the association. It is also his duty, under the act, and under direction of the association, to collect, receipt for, and transfer payments of interest or principal arising out of the loan made through the association. He is also made custodian of all securities, papers and records relating to the affairs of the association.

At this time it is well to state, that Cameron, who was the secretary-treasurer of the local association at Seattle, received compensation for his services by way of one per cent of the amount of moneys loaned to the local borrowers of the association. There are certain

details required when an application for a loan is received by the association not necessary to notice. In case an application for a loan is accepted, the association through whom the application comes is required to endorse the note, which the applicant gives covering the repayment of the loan. In other words, the association becomes a joint borrower with the applicant, and the company requires the bank to transmit the money loaned by draft payable jointly to the secretary-treasurer of the association and the applicant. It was so done in this case, the respondent bank sending its draft from its principal place of business in Spokane payable jointly to Montcrieffe Cameron, secretary-treasurer of the association, and the defendant Stewart.

The Federal Land Bank has no authority over any of the associations, or their officers; has no voice in their selection, and cannot discharge them. The secretary-treasurer of each association is chosen solely by the directors thereof, does not receive any compensation from the Federal Land Bank, but is paid solely from the funds of the association. It would appear, therefore, that the Federal Land Bank and the National Farm Loan Association are separate and independent bodies. It also appears that the Farm Loan Association is the agent of the borrower for that purpose and respondent contends that the association is the agent of the borrower and the secretary-treasurer thereof is solely and entirely agent of the association and of the borrower. That may be true in general, and yet the secretary-treasurer might be the agent of the Federal Land Bank for certain purposes in dealing with its borrowers, and he may be the agent of one of the other parties for certain purposes. The question is not controlled by the nature

of the Farm Loan Association and its transacting business through its secretary-treasurer with its borrower.

The original plaintiffs were the owners of the land in question and agreed to sell to defendants (Stewart) for $5,500, payable $1,250 in cash, and the remaining $4,250 to be cared for by the Stewarts procuring a first mortgage loan upon the property for $3,000 and giving a second mortgage to plaintiffs for $1,250. It was understood between them that the Stewarts were making an application to Cameron, secretary-treasurer of the Seattle association, for a Federal farm loan on the property. An earnest money receipt was signed by the parties on September 20, 1923. On October 11, plaintiff went to Cameron's office and employed him to make a deed to the Stewarts covering the land in question. On the following day the parties met in the office of Mr. Templeton, Stewarts' attorney. Templeton did not approve the deed prepared by Cameron, and prepared another deed from plaintiffs to Stewarts, and at the same time prepared a note and mortgage for $4,250 from the Stewarts to the plaintiffs, which were executed and delivered by the respective parties. At the same time, the parties executed and delivered a supplemental agreement reciting, among other things, that, whereas, plaintiffs had deeded the land to the Stewarts, and the Stewarts had executed a mortgage against the same for $4,250, payable in six months, and whereas, the Stewarts were negotiating for a farm loan on the premises for such amount as they could obtain, plaintiffs agreed that, upon the payment of $3,000 upon their mortgage, they would satisfy the mortgage for $4,250 and accept a mortgage for $1,250 on the premises, which should be junior and inferior to such mortgage as the Stewarts

would be able to obtain. It was known and discussed by all the parties at the time that, if the Federal farm loan were obtained, it would have to be upon a first mortgage.

Stewart was an applicant for such Federal farm loan. Stewart had taken Cameron out to look at the farm, and had given Cameron some of the data necessary to make up the loan application. Cameron made his appraisal of the property. As he did not have all the data at that time, the application was not completed, and it was not completely filled out and dated until September 8, at which time it was transmitted to respondent. About the last of December, respondent notified Cameron and Stewart that the loan was accepted, and that, if they were willing to accept the sum allowed, they were to furnish the bank with an abstract of title or title insurance.

Upon receipt of this notification Cameron phoned plaintiff and had him execute a satisfaction of the $4,250 mortgage. Plaintiff executed the satisfaction and delivered it to Cameron, who placed it of record. Thereafter a policy of title insurance showing free and clear title in Stewart was forwarded to respondent by the Washington Title Insurance Company of Seattle, which was received in Spokane on January 18, 1924. On January 22, respondent forwarded its draft payable to the order of Cameron, as secretary-treasurer, and Stewart, jointly. Upon receipt of the draft, Cameron endorsed both his own name and that of Stewart upon the back, and deposited the same in his account as secretary-treasurer, in the National City Bank of Seattle, which bank refused to recognize the signature of Stewart by Cameron. A day or two later, Cameron telephoned Stewart and told him it would be necessary for him to go to the bank and endorse

this draft, and that he could at the same time obtain the amount of the draft which was coming to him, which was $940, and the $3,000 remaining would be paid to plaintiff. Stewart endorsed the draft at the National City Bank, received a check for $940 coming to him, turned the check back to the bank and received a cashier's check for the same amount. He advised the officer of the bank that the rest of the proceeds of the draft should be paid to plaintiff. The satisfaction of the mortgage of $4,250 was delivered to Stewart at that time.

The plaintiff was not advised by Cameron that the money had been received from respondent, and when he inquired of Cameron from time to time as to when the money was expected, he replied that he expected to receive it in two or three weeks. In the early part of May, when the six months for which the $4,250 mortgage to plaintiff had been given had expired, plaintiff went out to the farm to see Stewart, and then learned for the first time that the money had arrived in January, and that Stewart had received his portion. Plaintiff then returned to the city and took the matter up with Cameron. Cameron had used the money and has never accounted for it.

Plaintiff bases his right of recovery against respondent on the contention that Cameron, in taking the satisfaction of the $4,250 mortgage and placing the same of record, was acting as agent of the bank, and therefore plaintiff claims the right to have his mortgage reinstated as a prior lien to the one held by respondent from Stewart.

Respondent, in resisting the claim of plaintiff, contends that there are nine salient facts to refute that contention. Some of the nine statements are incontestibly true, some are mere conclusions, and some are incorrect.

(1) The contract entered into between plaintiff and the Stewarts contemplated that respondent should have a first mortgage against the land in case a loan was secured from it.

There is no doubt that this statement of fact is true. The contract entered into between plaintiff and defendants Stewart contained the following provisions, summarized:

That it was understood and known that the Stewarts were negotiating for a farm loan on the premises described for such amount as they could obtain, with which to pay off the mortgage of $4,250 to plaintiff, which was due within six months from October 12, 1923, the date of the contract; that it was known that the Stewarts might have difficulty in obtaining more than $3,000 on the loan; that it was agreed as a part of the mortgage that, upon the payment of $3,000 by the Stewarts, plaintiff would accept the same and accept a second mortgage on the premises for $1,250 for one year thereafter, the second mortgage to be junior and inferior to such mortgage as the Stewarts might be required to execute for a federal farm loan.

(2) The second salient fact urged as established is, that the bank never had knowledge of the contract between plaintiff and defendants Stewart. That we deem immaterial as between the bank and either the plaintiff or the defendant.

(3) The third and fourth statements as established as facts are, that the application to the bank did not show any mortgage against the property in favor of plaintiff, and that respondent never had knowledge of plaintiff's mortgage or that Cameron had taken a satisfaction of it.

These statements are erroneous. The loan application of the Stewarts to respondent did and does show

that there was a mortgage against the property in favor of plaintiff, to pay which was one of the things for which the loan was being procured. Respondent had knowledge of plaintiff's mortgage, but did not have knowledge that Cameron had taken a satisfaction of it, except such knowledge as might be imputed to respondent by Cameron's having the satisfaction of the mortgage in his own possession, if Cameron in that transaction could be deemed the agent of respondent.

(5)   The bank was furnished with title insurance showing clear title in Stewart, which is true.

(6)   That respondent transmitted the money covering the loan by draft payable jointly to Stewart and Cameron as secretary-treasurer, exactly as prescribed by law, is true.

(7)   That it was Stewart's duty to see that plaintiff was paid, is stated as one of the salient facts, which we consider not a fact, but a possible conclusion to be drawn from the facts.

(8)   That Stewart had the power and opportunity to insure the payment of plaintiff's mortgage. That is undoubtedly incorrect, as it was Cameron's act, in misappropriating the funds which had been transmitted to him and Stewart jointly, which prevented the payment of plaintiff's mortgage.

(9)   That plaintiff did not show business prudence in turning over the satisfaction of his mortgage to Cameron before receiving payment. Again, this is a conclusion of law to be derived from facts, rather than a pure fact.

[1]   In order to clear the way as we go, we will first dispose of the right of recovery of plaintiff against the respondent bank.

We consider that that is controlled by the fact that both plaintiff and defendants Stewart contracted

that respondent should have a first mortgage for whatever amount respondent would see fit to loan upon the premises to Stewart, the borrower, and the local Farm Loan Association, which was $4,250. Therefore, as between plaintiff and defendants Stewart, neither of them can resist the priority of respondent's first mortgage against the land which defendant Stewart secured. It is of no consequence that the bank had knowledge of the mortgage against the property in favor of plaintiff, or whether it had knowledge that Cameron had taken a satisfaction of it. The loan was applied for by the Stewarts for the purpose of paying that indebtedness, and both plaintiff and defendants Stewart had agreed that any amount that defendants Stewart might procure as a loan from $3,000 up to $4,250, the amount of plaintiff's mortgage, should be a first and prior lien against the property. Respondent was concerned only in knowing that its borrower had good title and that it was clear of incumbrances. It was necessary to clear the title of plaintiff's incumbrance. Any other transactions between plaintiff and defendants could be of no concern to respondent. Therefore the decree against plaintiff in favor of respondent was correct.

[2]  As between the plaintiff and defendants Stewart, both contend that, as Cameron was the agent of the other in the transaction, whereby the $3,000 which had been paid over to Cameron was misappropriated, the other should bear the loss.

Plaintiff contends that there was no understanding between him and Cameron that the $3,000 due plaintiff should be paid to Cameron; that there was no authorization by plaintiff empowering Cameron to deliver the note and mortgage held by plaintiff to Stewart; that there was no understanding between them that

Cameron should accept on plaintiff's behalf a second mortgage and note, which was called for by the contract alluded to between them, in the event the $3,000 was paid on plaintiff's note. It is urged that, since Stewart knew on January 11, that Cameron was in possession of the $4,250 note and mortgage belonging to plaintiff; knew at the time he endorsed the draft received from respondent, and received the remaining $940 belonging to him, that plaintiff had not been paid; that no arrangement had been made with the bank where the money was deposited in Seattle to pay him, and that the $3,000 belonged to plaintiff; that the $4,250 note to plaintiff which was then delivered up to Stewart had not been marked paid or cancelled, nor had it been endorsed by plaintiff, and was in its original condition; and that Cameron was in no sense the attorney for, or agent of, plaintiff—all these facts required that, at least as between plaintiff and defendants Stewart, defendants should be held liable as decreed by the trial court, reinstating the $4,250 mortgage with interest at seven per cent from October 12, 1923, and foreclosing the same.

To the contrary, defendants Stewart contend that, since Cameron had possession of the $4,250 note and mortgage of plaintiff, and the new $1,250 note and mortgage heretofore mentioned, which were delivered to Stewart upon the receipt of the money by Cameron from respondent, and the satisfaction delivered to Stewart, the Stewarts are released.

Both parties rely upon principles announced in our decisions in *Wiswell v. Beck,* 92 Wash. 208, 158 Pac. 976, and *Kucher v. Scott,* 96 Wash. 317, 165 Pac. 82, and subsequent cases to the effect that, where one of two innocent parties must suffer through the act of another, the loss must fall upon the party who made the loss possible.

Defendants rely upon the presumption of law that a debtor is authorized to infer that the solicitor or agent is empowered to receive both principal and interest from his having possession of the bond or mortgage; citing Joyce, Defenses to Commercial Paper (2d ed.), 977; *Griswold, Hallette & Persons v. Davis,* 125 Tenn. 223, 141 S. W. 205; *Western Security Co. v. Douglass,* 14 Wash. 215, 44 Pac. 257. In the *Davis* case, *supra,* the Tennessee supreme court said:

"As a general rule the debtor is not justified in paying the principal debt to an agent of the holder who is not expressly authorized to receive it, unless the agent, at the time of the payment, has in his possession the securities paid, and makes that fact known to the debtor and, if the person to whom payment is made is not in possession of the written securities, the burden is upon the debtor to show that the one to whom payment was made had special authority to receive payment, or that he was represented by the creditor to have such authority."

In the *Douglass* case, *supra,* this court said:

" 'If a debtor, owing money on a written security, pays to or settles with another as agent, it is his duty, at his peril, to see that the person thus paid or settled with is in *possession of the securities.*' "

Other cases to the same effect are cited by defendants. We regard that as the general rule.

Primarily, for the purpose of procuring and transacting the matters concerning the federal farm loan, Cameron was undoubtedly the agent of the defendants Stewart. He was not in any sense the agent of respondent bank. He was a public agent whose authority parties dealing with him in that capacity were bound to know. 2 C. J. 565-566.

Manifestly, however, he was also an intermediary between plaintiff and defendants Stewart. He received the moneys of the Stewarts for the purpose of

applying the same to the payment of the Stewarts' debt to plaintiff. For that purpose, as all parties knew, plaintiff put him in possession of securities he had taken from defendants Stewart. He then, under the well settled principles of law, became the agent of plaintiff for the purpose of receiving plaintiff's money and delivering the securities in satisfaction thereof to defendants Stewart. This he did not do, but received plaintiff's money from defendants Stewart, delivered plaintiff's securities and satisfaction-piece to Stewart without any notice on the part of defendants Stewart that he had no authority so to do, and then converted the money to his own use without paying it over to his principal, the plaintiff.

"The apparent power of an agent is to be determined by the acts of the principal, and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority." 2 C. J. 574.

It is plain that plaintiff had clothed Cameron with apparent authority as his agent to receive the $3,000 due him from the defendants Stewart. Stewart acted in entire good faith in dealing with Cameron, allowing Cameron to retain the money on deposit in the Seattle National Bank, and taking from Cameron the securities which had been given to plaintiff, and the satisfaction thereof. When Cameron embezzled the money he embezzled the money of the plaintiff.

As was said by this court in *Moore v. Blackburn,* 67 Wash. 117, 120 Pac. 875:

"The answer to this question is to be determined by our conclusion as to whose agent Kellogg was in retaining the money to pay off the first mortgage and

other liens. Agency is a fact to be determined by the peculiar circumstances of each case; so that there are many cases holding that the broker who acts as intermediary of the parties is, under some conditions, the agent of one party, and under other conditions, the agent of the other party.''

In that case it was held that Kellogg was the agent of the borrower, and was paid a commission for his services by the borrower, which is the fact in this case also, which would make him the agent of the borrower. But in this case, while Cameron was the agent of the Stewarts, the borrowers, his transaction with the borrowers had ceased. He had become, for a limited purpose, the agent of the plaintiff. As such he defaulted.

We therefore conclude that the maxim stated in *Wiswell v. Beck,* and *Kucher v. Scott, supra,* should apply to the plaintiff in this case, he having put it in the power of his agent for a limited purpose to defraud another. See, also, *Johnston v. Milwaukee & Western Inv. Co.,* 46 Neb. 480, 64 N. W. 1100; *Campbell v. Gowans,* 35 Utah 268, 100 Pac. 397, 23 L. R. A. (N. S.) 414 and case note; *Harrison National Bank v. Austin,* 65 Neb. 632, 91 N. W. 540, 101 Am. St. 639.

Upon a full consideration of the facts and the law, therefore, we conclude that the decree as to respondent bank should be and is affirmed, and the judgment as to plaintiff should be and is reversed, and a decree entered in favor of appellants Stewart.

TOLMAN, C. J. FULLERTON, MAIN, and MITCHELL, JJ., concur.