This is an appeal from a judgment of the superior court, entered after review upon certiorari, annulling an order of the board of trustees of the firemen's relief and pension fund of the city of Seattle, which denied a disability pension to Harry C. Gifford, a member of the fire department who had become mentally incompetent.
Gifford, being an active member of the Seattle fire department, on or about November 11, 1936, after a service of nineteen years, became permanently insane, as the result of cerebral spinal syphilis, and was committed to the state hospital for the insane at Sedro Woolley. His mother, Nellie Hinman, having been appointed guardian of his person and estate, applied, on his behalf, to the trustees of the firemen's relief and pension fund for a pension payable, under § 9 of chapter 196 of the 1919 Session Laws, p. 674, as amended by chapter 86, Laws of 1929, p. 150, § 7, and chapter 39 of the 1935 Session Laws, § 6, p. 105 (Rem. Rev. Stat. (Sup.), § 9567 [P.C. § 947]), to a member of the fire department who, after a service of fifteen years, has become permanently disabled from a cause not arising in the performance of his duties.
From the records of the board of trustees, as embodied in the return to the writ, the following facts appear:
On December 14th, reports were made by the sick and finance committees of the board reciting that, after due consideration of the data and facts pertaining *Page 564 
to the disability claim of Harry C. Gifford, they recommended its disapproval.
The minutes of a meeting of the board, held on the same day, recite that, after consideration of the reports of the sick and finance committees, a general discussion was indulged in, and an oral explanation of the report of the pension fund physician, Dr. P.C. Irwin, heard. A motion made and seconded for approval of the claim was lost on roll call.
In response to an application for a further hearing, Mrs. Hinman was advised through her attorney, Mr. Elias A. Wright, that a regular meeting of the board of trustees would be held on January 14, 1937, at which the matter of her application for her son could be taken up by the board of trustees. There is no record of a meeting on the 14th of January, but the minutes of a meeting held on February 17th recite that Mr. Wright presented an oral statement of the case, whereupon the matter was reopened and referred to the corporation counsel for an opinion
". . . as to the legal status of the board in the further consideration of the case, further consideration of the case to be determined after the opinion has been received."
At a meeting held March 30, 1937, Mr. Wright, being present, was invited to address the board, "presenting his views and interpretation of the laws governing the issue under consideration." At the same time, Dr. Irwin was asked to explain to the board the medical report of Dr. Swift and himself contained in the file. Dr. Irwin was asked further if he had ever treated Gifford, to which he replied, "No." He was questioned by Mr. Wright as to whether, in his opinion, the disease was acquired or inherited. He stated there was no way to determine this, explaining that the period in which it could become fatal was a question *Page 565 
he could not determine. The minutes recite that Dr. Maxson also took part in the discussion and explanations. The matter was laid over to the next meeting.
The board again considered the matter on April 14th. At this meeting, Mrs. Hinman and her attorney, Mr. Wright, being present, Mr. Wright was asked if he had any further evidence or recommendation to present to the board. He asked the board to hear three persons, whom he named, all of whom made unsworn statements favorable to the good character of the applicant. The minutes recite that, after considerable discussion, a motion was made that applicant be allowed all moneys paid into the pension fund by him, with four per cent interest. The motion was lost. The minutes continue:
"A motion was then made by Mr. Taylor that the petition for a pension of 1/3 salary as presented be allowed, seconded by Mr. Gough; during discussion on the motion it was argued that the pension fund should not be liable for social diseases, where no evidence had been presented that it was incurred in the service of the Fire Department, and the By-Laws providing that no relief shall be granted on account of sickness, disability or death of any member resulting from his dissipation, immoral habits or practices. Roll Call on the motion resulted in denying the petition by a vote of 6 to 3."
This is the final order of the board of trustees which was reviewed by the court. The court entered judgment annulling the action of the board in the denial of the application for a pension, and directing that further proceedings in connection with the application be taken in accordance with the law.
Section 9 of the firemen's pension act, as amended (Rem. Rev. Stat. (Sup.), § 9567), after providing for the payment of certain benefits to dependents of a fireman who, having served less than fifteen years, *Page 566 
may die from natural causes, or from accident not resulting from the performance of duties, continues:
". . . and whenever such member has served in said fire department fifteen (15) years or more and shall sustain a disability rendering him unable to continue his employment in said fire department, which disablement was not caused in the performance of his duty or duties as defined in this act, he shall be retired and be paid a pension from said fund which shall be equal to one-third (1/3) of the salary attached to the rank held by such member in said department at the time he suffered his disability."
Rem. Rev. Stat., § 9571 [P.C. § 951], provides:
"Said board shall hear and decide all applications for such relief or pensions under this act, and its decisions on such applications shall be final and conclusive and not subject to revision or reversal except by the board."
This section also provides that the board shall, in addition to other powers therein granted, have authority:
"Third — To make all needful rules and regulations for its guidance in conformity with the provisions of this act."
The by-laws of the board provide (Art. VIII, § 8):
"No relief shall be granted on account of sickness, disability or death of any member resulting from his dissipation, immoral habits or practices."
It being conceded that the applicant for pension is permanently disabled after nineteen years of service in the department, he is entitled to a pension under the act, unless it be held: (1) That the board had power to limit his right by the adoption of § 8 of Art. VIII of its by-laws, and that, without any evidence, the board may conclusively presume that the applicant's disability is the result of dissipation, immoral habits or practices; or (2) that, in any event, the decision of the board is conclusive as against review by the courts. *Page 567 
 [1] The board is authorized to make all needful rules and regulations for its guidance "in conformity with the provisions of this act."
The act provides, without qualification, that a disabled fireman having the required period of service "shall be retired and be paid a pension from said fund." The board's rule is not in conformity with the act, but in derogation of it. Perhaps it might have been better had the legislature conditioned the grant of a pension as provided in the board's rule; but it did not do so and did not delegate authority to the board to do so.
A comparison of the firemen's pension law with that of the policemen's might warrant an inference that the omission from the firemen's act of any restriction of this character was not an oversight. Both pension laws as originally passed in 1909 provided protection to members of the departments or their dependents only where disability or death was of service origin. At the 1911 session, the legislature amended the policemen's pension act to provide payment of a pension to permanently disabled policemen without regard to the cause of disability, conditioned, however, that the incapacity for service was not brought on "by dissipation or abuse, of which the board shall be judge." (Rem. Rev. Stat., § 9583 [P.C. § 1204].)
No provision was made for the payment of pension to firemen sustaining permanent incapacity from causes not of service origin until 1929, when the provision quoted above was inserted in § 9 of the act. (Rem. Rev. Stat., § 9567.) Having before it the qualification contained in the police pension act, the legislature chose to write the firemen's act without the restriction. Since 1929, succeeding legislatures have amended § 9 without modifying this provision.
It is to be noted also that, while policemen disabled by causes of non-service origin are entitled to a pension *Page 568 
at half pay, conditioned as to dissipation or abuse, firemen are entitled to a pension of only one-third when so retired, but without the condition.
[2] But even if we are to assume authority in the board to make the rule, the record is devoid of any evidence that the disease from which the applicant suffered was the result of his "dissipation, immoral habits or practices." The board's physician stated that he could not say what was the origin of the disease from which the applicant suffered. It is a scientific fact that the disease may be inherited or acquired innocently by infection. What is said by the appellate division of the supreme court of New York may be appropriately quoted:
"This relator was dismissed from the police force of the city of New York on a finding of guilty upon charges of conduct unbecoming an officer. The specification is that he contracted syphilis at some time in the past, and is now affected with syphilis. There is proof in the record that syphilis is an infectious disease. And we may take judicial notice that it may be contracted by a person entirely innocent of sexual commerce with one tainted therewith. No attempt was made to show that the relator contracted directly this disease as the result of immoral practices or of loose conduct. . . . For aught that appears, the punishment of dismissal was inflicted for innocent misfortune, not conscious misdoing." People ex rel. Langdon v. Waldo,158 App. Div. 936, 143 N.Y. Supp. 818.
The record is susceptible to but one construction — that the pension was denied because of the rule and the board's assumption, without evidence to support it, that the applicant's disablement was brought on by his own "dissipation, immoral habits and practices" in violation of the rule.
The order of the board so founded cannot be sustained, unless it be held that there is broadly delegated to it authority to grant or withhold pensions at its own *Page 569 
discretion, without regard to conceded facts bringing the applicant clearly within the provisions of the act.
[3] In State ex rel. Criswell v. Board of Trustees,93 Wn. 468, 161 P. 361, followed in State ex rel. Chapman v.Edwards, 161 Wn. 268, 295 P. 1017, we held that it is within the power of the legislature, when enacting a statute creating a new right with its remedy, to vest in some board or person power to adjudicate all matters arising under the statute and to make such adjudications final and conclusive; and that the determination of all questions concerning the administrations of the present act was vested in the board. But our holding in those and similar cases presupposes a proceeding conformable to the elementary standards of fairness and reasonableness which, it must be assumed, the statute contemplates.
The statute provides for a pension on the ascertainment of two conditions: (1) That the applicant is permanently disabled; and (2) that at the time of his disablement he had served on the fire department fifteen years or more. If the existence of either of these prerequisites had been in issue, the decision of the board, after a hearing, would have been conclusive. Here, the board, closing its eyes to the admitted facts, based its decision on a predetermined course of policy.
Speaking of the force of a city charter provision, in relation to civil service, which made the decision of the civil service commission final, we said in State ex rel. Wolcott v.Boyington, 110 Wn. 622, 188 P. 777:
"It may be that the hearing accorded an employee by the civil service commission in a particular case might be so unfair in the circumscribing of the employee's opportunity to be heard, or in some other respect, as to conclusively show such arbitrary and capricious action on the part of the civil service commission as to call for the conclusion that its members did not exercise *Page 570 
their judgment at all, and thus warrant interference by the courts, preventing the putting into force of the decision of the civil service commission so rendered; . . .
"Stated generally, we think it may safely be said that the subject of inquiry by the courts touching such cases is not whether they have been decided rightly or wrongly by the special tribunal created by law to decide them, but whether or not the city authorities, including the special tribunal, have proceeded in the manner prescribed by law, in this case the city's charter."
In Carleton v. Board of Police Pension Fund Commissioners,115 Wn. 572, 197 P. 925, a case arising under the police pension act, it is said:
"Counsel for appellant urges that we hold in favor of the finality of the decision of the board. We decline to pass upon that question in this case, for whether its decisions are conclusive or not under the policy of the statutes there remains the right of certiorari, since the act does not provide for appeals from the decisions of the board."
In that case, the widow of a deceased policeman made application for a pension allowance of one thousand dollars, pursuant to the terms of the pension fund act. The pension board denied the application without the taking of testimony for the reason, as explained by its counsel,
"`The main facts concerning the death of Sergeant Carleton were well known to many members of the board, and in fact, were more or less matters of common knowledge in the police department. For this reason the board took no evidence at the time it first passed on the respondent's application for a pension.'"
Commenting upon this, the court said that the board had not pursued the authority conferred upon it in the mode required by law; that the proceeding called for the determination of questions of fact, of which the members of the board performing judicial functions *Page 571 
were the triers; and that, in the discharge of that duty, it was clear from the statute that the members of the board could not act upon their own personal knowledge of the facts.
In the present case, the board based its action wholly upon a rule it had no authority to adopt and an unwarranted presumption that the rule had been violated.
The judgment is affirmed.
STEINERT, C.J., HOLCOMB, MAIN, and SIMPSON, JJ., concur.