548

HOME OWNERS' LOAN CORPORATION, *Respondent*, v.
FRED P. RAWSON *et al.*, *Appellants.*[1]

'Reported in 83 P. (2d) 765.

*Edgar M. Swan,* for appellants.

*Tom S. Patterson, Russell F. Stark,* and *D. Elwood Caples,* for respondent.

MILLARD, J.—This action was brought to foreclose a real estate mortgage. Defendants admitted the execution and delivery of the note and mortgage and that they did not make the payments accruing thereunder. As an affirmative defense, they allege that, prior to and at the time the loan secured by the mortgage was made, it was made a condition, by the plaintiff through one of its employees, to the granting of the loan that defendants remodel the dwelling house located on the premises covered by the mortgage; and plaintiff's employee promised that, on defendants' application therefor, a second loan, to be used by defendants in remodeling the house, would be made by plaintiff. In reliance on that agreement, defendants applied for the second loan and proceeded to remodel the house, by reason of which repairs defendants were under such expense for labor and material that they were unable to make the stipulated payments on the first loan. The liens for the labor and materials were foreclosed, defendants being unable to pay same because of failure of plaintiff to timely make the promised second loan. The failure of defendants to satisfy the liens was the basis of the refusal of plaintiff to make the second loan.

"Defendants were notified that until said liens were satisfied, said loan would not be made, plaintiff wellknowing at all times that it was upon the promise and agreement of the plaintiff to make the loan that the expense for labor and material was incurred and that

defendants had at all times relied thereon for the money with which to pay for same and plaintiff knew that without the loan that defendants could not satisfy the liens."

The trial resulted in entry of a decree foreclosing the mortgage. Defendants appealed.

Respondent is a corporation created pursuant to 12 U. S. C. A., § 1463, which authorizes and directs the Federal Home Loan Bank Board

". . . to create a corporation to be known as the Home Owners' Loan Corporation, which shall be an instrumentality of the United States, which shall have authority to sue and to be sued in any court of competent jurisdiction, Federal or State, and which shall be under the direction of the Board and operated by it under such bylaws, rules, and regulations as it may prescribe for the accomplishment of the purposes and intent of this section. The members of the Board shall constitute the Board of Directors of the Corporation and shall serve as such directors without additional compensation."

Appellants contend that respondent's breach of the agreement to make a second, or so-called reconditioning, loan, rendered it impossible for them to make payments on the mortgage given to secure payment of the first, or refinancing, loan.

Counsel for respondent argue that its inspectors did not make, nor did they have authority to make—and appellants knew that the inspectors had no such authority—the alleged agreement; that the default of appellants was the reason for rejection of the application for the second loan.

The secretary of the treasury on behalf of the United States subscribed for all of the capital stock of the corporation. All funds are required to be kept on deposit in the Treasury of the United States. The object of the corporation is declared by the act to be

to engage in governmental emergency financial relief to prevent the loss of encumbered homes of citizens of the United States. Respondent corporation is an instrumentality of the United States, and its board of directors is authorized to make rules and regulations for the accomplishment of the purposes and intent of the enactment. Pursuant to the authorization to make rules, the board adopted the following rule:

"This corporation is proceeding under the provisions of the Home Owners' Loan Act of 1933, as amended. No one has authority to bind or commit the Corporation except in accordance with the rules and regulations properly established thereunder by its Board of Directors. No officer or employee shall in any letter, form, or other communication or by any procedure or in any other way attempt to bind or commit the Corporation in advance of the delivery of the authorization for the bonds. In every letter, form or communication to the applicant or lien holder, there must be inserted at the conclusion of such communication the substance of the following language: 'This communication is not a commitment. You will understand that this Corporation may not bind or commit itself to make any loan or to deliver any bonds at any time prior to the actual delivery of an authorization for bonds.'

"No contracts are valid and binding upon the Corporation until first authorized by the Board of Directors. The by-laws provide that 'Contracts of the Corporation, when approved by the Board of Directors, shall be made and signed in the name of the Corporation by the General Manager or a Deputy General Manager or such other person as is authorized by the Board of Directors.' "

The Federal Home Loan Bank Board, which is made *ex officio* board of directors of the Home Owners' Loan Corporation, consists of five citizens appointed by the president by and with the advice and consent of the Senate. Each member is required to devote his entire time to the business of the board, and the term of

each member is for a definite term of years. 12 U. S. C. A., § 1437. Subdivision "k," § 1463, 12 U. S. C. A., authorizes the board of directors of respondent corporation to make such by-laws, rules and regulations not inconsistent with the provisions of "this section, as may be necessary for the proper conduct of the affairs of the Corporation."

Respondent is authorized under the statute to make a refunding or refinancing loan, the purpose of which loan is to pay a previous loan on property, the corporation to take a new mortgage on the property, which the mortgagor may pay in small installments at a low rate of interest. The second type of loan which the respondent is authorized to make is a reconditioning loan. This loan is made to enable the borrower to enlarge or improve his mortgaged property. The type of loan first described is the one that was made by respondent to appellants and foreclosed by the decree in this action. In all cases where the respondent has acquired a mortgage or other obligation or lien, it is authorized to make a loan to provide for

". . . the maintenance, repair, rehabilitation, modernization, rebuilding, and enlargement of the homes financed and to take an additional lien, mortgage, or conveyance to secure such additional advance or to take a new home mortgage for the whole indebtedness; . . ." 12 U. S. C. A., § 1463, subd. (m).

On November 30, 1934, appellants executed and delivered to respondent their mortgage and note in the amount of $3,401.29, representing a refinancing loan to appellants, with interest at five per centum per annum, payable in monthly installments of $26.90.

On or about the same time, following the application of appellants for a second, or reconditioning, loan, three contractors submitted to respondent bids for material and labor to recondition appellants' home. The

lowest bidder, to whom was awarded the contract, ordered certain mill work under the specifications furnished to him and delivered the material to appellants. This bidder was notified by respondent's Tacoma office to delay further deliveries until notified by respondent. In April, 1935, respondent's state loan committee approved appellants' application for the second, or reconditioning, loan.

In May, 1935, appellants were advised that, until the taxes and liens for labor and material against the property were satisfied, no money could be advanced by respondent on the loan. The taxes and liens were not satisfied. From the date—November 30, 1934—of the first, or refinancing, loan to November 29, 1937 (the date of the trial of this action), appellants had not made any payments on the first loan. Under this agreement to pay taxes and premiums on insurance on the property, appellants paid during this period of three years only a small amount.

Some repairs were made in connection with the original refinancing loan to appellants. Those repairs, however, are not involved in this controversy.

Mr. Rawson, appellant husband, testified that a reconditioning inspector, named Swain, employed by respondent, visited the subject-matter of the mortgage a short time after the refinancing loan was granted, but before same was closed, to ascertain what repairs were needed. The plans prepared by appellants for remodeling the house were submitted to Swain, who expressed satisfaction with the plans and requested permission to show them to his superior officers in respondent's Tacoma office. Swain advised Mr. Rawson that such remodeling would increase the value of the property, and *he would see what he could do about it.* Mr. Swain was succeeded by another reconditioning inspector, who prepared plans for the reconditioning

of the house, took them to appellants (who had made application for the second or reconditioning loan), whom he directed to proceed with the work in accordance with those plans, and at the same time informed Mr. Rawson that the second loan would be granted in time to pay the cost of remodeling the house.

The evidence is overwhelming that appellants had actual notice of the limited authority of respondent's employees. The evidence does not sustain the position of appellants that a representative of respondent orally agreed to authorize the second or reconditioning loan.

Mr. Rawson, a graduate civil engineer, is a man of education and understanding. He admitted that he read the notation, "This communication is not a commitment," upon various letters received from respondent prior and subsequent to the date of the application for the reconditioning or second loan.

Under date of October 16, 1934, appellants made application for the reconditioning loan. On September 26, 1934, respondent addressed a communication to appellants respecting the forwarding of appellants' application for the first, or refinancing, loan to the Seattle office for final closing. The notation clearly appears on that letter and was read by Mr. Rawson.

A letter of October 4, 1934, from respondent to appellants in acknowledgment of appellants' letter of September 27, 1934, bears the notation, which Mr. Rawson read. In that letter, which has reference to the first loan, respondent stated that it did not believe

". . . it was Mr. Swain's intention that you should proceed with this work quite as fast as you have, before the actual closing of your loan, as no one could predict the actual closing date at the time Mr. Swain called on you."

A letter of October 9, 1934, from respondent to ap-

pellants, bears the notation, which is clear. By letter of November 21, 1934, appellants were advised by respondent that their application had been passed to the legal department, which was awaiting information from respondent's local attorney in Vancouver, Washington.

Under date of December 14, 1934, respondent's letter, which contained the notation apprising appellants that no officer or employee may commit the corporation to make any loan prior to actual delivery of the authorization, informed appellants that "we are today closing your loan on behalf of the new consent signed by M. E. Wesson."

Respondent's letter of January 11, 1935, advised appellants that their letter of January 8, 1935, was being referred by respondent's Seattle office to its Tacoma office. A letter of January 12, 1935, from respondent's Tacoma office informed appellants there had been some undue delay in the final closing of their application for a reconditioning loan, and assured appellants

". . . that we have done everything possible in this Department to avoid delay in the furtherance of your application. . . . The appraisal has been ordered for some time, and I am sure that Mr. Davis' report will be returned to us in the near future. We do not feel that we can insist on prompt action by Mr. Davis, since he is allowed only $5.00 for the appraisal, out of which he must pay his own expenses from Longview to Vancouver.

"It is unfortunate that so much time has been taken in the closing of your application, but we can assure you that this Department will do everything in its power to avoid any further delay."

Respondent by letter of January 18, 1935, requested appellants to forward the new policies of insurance, the receipts for the premiums thereon, and the indorsements for the old policies, so that respondent could proceed to close the loan. Under date of January 24,

1935, appellants were advised by respondent that, of the three bids submitted for reconditioning of the house, that of the Parr Lumber Company was the low bid. In that letter were transmitted copies of form of agreement for labor in connection with the work. The letter then stated, "Upon receipt of these forms properly signed, your application will be forwarded to the State office for closing."

This communication also bears the notation quoted above, as does respondent's letter of February 18, 1935, to appellants advising the latter that the application file was completed by the Tacoma office and forwarded to the Seattle office January 30th; that the Tacoma office was awaiting approval of the Seattle office before taking further action in the matter of the application.

On March 30, 1935, respondent wrote appellants that the reconditioning application had been returned to the Tacoma office by the state loan committee with the request for further information in connection with the loan. The committee was of the opinion that the income of Mr. Rawson, as shown at the time of the original loan, would not justify the corporation in making the additional loan required for the reconditioning.

Respondent's state loan committee advised Mr. Rawson April 10, 1935, that, in view of the fact that the appellants had done considerable work and had incurred expense on the assumption that the loan would be granted, the committee had approved the application for the loan. Appellants were requested by respondent's letter of April 18, 1935, to advise as to the amount of taxes they owed on their property. Respondent advised appellants by letter of May 9, 1935, that the rules of the corporation necessitated payment of 1934 taxes before an additional loan could be made, and that the application for a loan must be held until those taxes were paid. That information in writing

was again given by respondent to appellants May 23, 1935.

In appellants' letter of May 26, 1935, complaining of respondent's refusal to make a commitment, they said:

"Before going any further with this loan I would like to have you explain just what you mean. . . . Before going any further, or putting any more money into this property I will have to have definite assurance that I am going to get the loan and the exact amount I am going to get. When you are in a position to tell me this, we can proceed further."

In answer to that letter, respondent wrote appellants that the meaning of the refusal to make a commitment was that

"We are not permitted to commit the Corporation to the definite fact of making any loan at anytime. As stated to you in my letter of May 9 your application is ready to go to the title company immediately upon receipt of your tax receipt. There is nothing more that we can do until such is received."

The letter then informs appellants as to the amount of loan they will receive, cost of the loan, etc.

Mr. Rawson, under date of September 1, 1935, acknowledged receipt of respondent's letter of August 21, 1935, advising appellants to call on respondent's local attorney in Vancouver, and stated:

"I wish to apologize for the long delay. I hope to be in Seattle in the very near future, at which time I will see you and explain the present status of my application for a loan, so far as I am concerned. It is not convenient for me to call on . . . your local representative, as he is the direct cause for the blocking of my completing the loan. I would request that we hold up further negotiations until a personal conference is arranged."

Other than the testimony of appellants, there is no evidence that Swain or any other employee of respondent made any agreement with appellants on behalf of

respondent to authorize a second or reconditioning loan. Swain testified that he did not make any such agreement. The letters, a portion of which we have reviewed above, corroborate him.

The correspondence between the parties discloses—appellants admit that they read and understood the notation on respondent's letters that no officer or employee of the respondent had authority to commit the corporation to make any loan prior to the actual delivery of the authorization—that appellants did not at any time assert that a loan had been authorized by any one. Their letters expressly recognize the fact that the loan had not been authorized. There is no evidence as to the amount of the loan that respondent's representative is alleged to have agreed could be made to appellants. Of course, there is no evidence that respondent would make an additional loan to appellants if they failed to pay the stipulated installments under the loan already made to them. The expressions—at most, that is all our search of the record elicits—by several of respondent's employees to the effect that they felt that it was probable that respondent would make the loan which appellants desired, are not sufficient to establish an agreement by respondent's employee on behalf of respondent to make the loan.

Appellants wrote respondent May 26, 1933, that, before going any further or putting any more money into the property, they would have to be assured definitely that the loan would be authorized. The appellants recognized September 1, 1935, that negotiations had gone no further than the making of an application for a loan which had not then been granted. This is clear from the statement of Mr. Rawson in his letter of that date to respondent that he hoped to be in Seattle soon and would explain the present status of his application for

a loan. In that letter, Mr. Rawson requested that further negotiations be held in abeyance "until a personal conference is arranged."

Appellants refused to comply with the condition prerequisite to making the second loan — clear the property from intervening liens and pay the taxes thereon—hence the board of directors of respondent corporation refused to make the loan, which was its duty, as, under the statute, the proceeds of the reconditioning loan could not be applied to the payment of taxes. All of the time (three years) that appellants were endeavoring to negotiate the reconditioning loan they were in default upon their first or refinancing loan. Appellants failed to sustain the burden of proof that any employee or representative of respondent made the alleged agreement to authorize the second or reconditioning loan.

This renders more or less academic the question whether respondent could, by rule quoted above, limit authority of its agents and employees to bind respondent and the further question whether appellants were chargeable with notice of the limited authority of respondent's employees or had actual notice thereof.

The authorization by Congress to respondent's board of directors was not the delegation of legislative authority to an administrative board. The Home Owners' Loan Corporation is, as the statute declares, an instrumentality of the United States, and its employees are public agents, whose authority is set forth in the rules promulgated by respondent's board of directors. Not only are appellants chargeable with notice of the limited authority of respondent's agents (see *Bjorkstam v. Federal Land Bank*, 138 Wash. 456, 244 Pac. 981), appellants had actual notice of the limited authority of respondent's agents.

Congress may authorize an administrative officer or

body to make rules and regulations respecting the administration of the law; and such rules, when so made, have the force of law. 12 C. J. 845.

The statute under which respondent corporation (an instrumentality of the United States) was created and its board of directors is authorized to function, does no more than permit the administrative board to exercise the discretion vested in it to effectuate the clearly and definitely expressed policy in the statute. It does not constitute legislation.

█ Counsel for appellants next contends that respondent alleged, but failed to prove, its corporate capacity. It is argued that the allegation of corporate capacity was not admitted by appellants, who denied each and every allegation, which included the allegation of corporate capacity, except as appellants in their answer specifically admitted same. Counsel for appellants insists that, even if we may take judicial notice of the statute authorizing the creation of respondent corporation, the organization of the corporation is a fact to be proved the same as any other allegation in the complaint.

Appellants admitted the execution and delivery of the mortgage—its validity is not questioned—upon which respondent's action is based. There was no objection to the introduction in evidence of that mortgage, which recites mortgaging by appellants of their property to the

"HOME OWNERS' LOAN CORPORATION, a corporation organized under and by virtue of the authority granted in H. R. 5240, designated as the 'Home Owners' Loan Act of 1933,' approved June 13, 1933 . . ."

The mortgage having been introduced in evidence, the whole contents of the instrument were in evidence. The recitals in the mortgage are *prima facie* correct,

and, the contrary not being shown, are sufficient to establish the fact of respondent's character.

" 'Prima facie' evidence is to be contrasted with conclusive evidence. It means that which, standing alone, unexplained or uncontradicted, is sufficient to maintain the proposition affirmed. It is such as, in judgment of law, is sufficient to establish the fact; and, if not rebutted, remains sufficient for that purpose. 'Prima facie' evidence is that which, being consistent with the truth of the hypothesis, raises such a degree of probability in its favor that it must prevail if credited by the jury, unless it is rebutted or the contrary proved. It is an influence or presumption of law, affirming or negativing a fact, in the absence of proof, or until proof can be obtained or produced to overcome the inference; and it is said to be the weakest of all evidence upon which legal action can be sustained, ceasing to be sufficient when rebutted or impaired by contrary and better proof. It is evidence, however, which, standing alone and unexplained, will maintain the proposition and warrant the conclusion to support which it was introduced." 1 Jones, Comm. on Evidence (2d ed.), 32, § 19.

See, also, *Falls v. United States Sav., Loan, & Bldg. Co.,* 97 Ala. 417, 13 So. 25, 38 Am. St. 194, 24 L. R. A. 174.

The decree is affirmed.

STEINERT, C. J., BEALS, GERAGHTY, and MAIN, JJ., concur.