In the Matter of Avon Western Corporation, Respondent, against Daniel P. Woolley, as Commissioner of Public Markets of the City of New York, et al., Appellants.

First Department, July 2, 1943.

*Paxton Blair* of counsel (*Charles C. Weinstein* and *Silas S. Lippman* with him on the brief; *Robert H. Schaffer, Acting Corporation Counsel*), for appellants.

*Nathan A. Epstein* of counsel (*Milton E. Sahn,* attorney), for respondent.

DORE, J.   Special Term has held void so much of Local Law No. 32 of 1942 as requires the grading of live poultry by the licensees of the New York City live poultry terminal.   The Commissioner and Deputy Commissioner of Markets of the City of New York appeal.

Petitioner, a tenant in the central live poultry terminal established by the City of New York under Agriculture and Markets Law, section 267-a, brought this proceeding to restrain the Commissioner of Public Markets from revoking petitioner's license for failure to pay so-called grading fees required by section B36–83.0 of the Administrative Code.   The fees imposed were for services rendered by a live poultry grader employed by the United States Department of Agriculture who regraded petitioner's live poultry.   After a hearing ·the petitioner's

license was revoked unless payment for the grading service was made. It appears that twelve out of fifteen live poultry dealers, tenants of the said terminal, were served with similar violations and this is a test case. The facts are substantially admitted. The sole issue is the validity of section B36–83.0 of the Administrative Code.

Special Term held that that section of the Local Law was not authorized by the enabling act, section 267-a of the Agriculture and Markets Law; that it was discriminatory in that it applied only to dealers who sold live poultry at the terminal and did not apply to other dealers who sold their poultry at other places in the city and accordingly was an unreasonable and arbitrary restraint on the lawful vocation of the tenants of the terminal; that it could not be sustained on the ground of public interest or as being in furtherance of the protection of the health and safety of the community since whether graded by the dealers at the terminal or left ungraded by the outside dealers there was no provision of law requiring that the poultry be sold to the consumer by grade; and that the consumer buys on the basis of a physical examination and at prices regulated by natural economic laws and not on the basis of grade fixed at the terminal. The court accordingly held the Local Law unconstitutional and void as violative of the due process and equal protection clauses of the State and Federal Constitutions.

The State Legislature by section 267-a of the Agriculture and Markets Law (added by L. 1940, ch. 768) authorized the Board of Estimate of the City of New York to establish a central live poultry terminal and provided that, if and to the extent that the Board should so direct, after its establishment no live poultry should be received in the city from any point outside, and no live poultry should be inspected at, any point other than the central live poultry terminal. By section 269 of the Agriculture and Markets Law the State Legislature authorized the Commissioner of Public Markets of a city to make rules for the regulation *inter alia* of " 5. The establishment of standards or grades for different classes of market produce, not inconsistent with law or with the rules of the Department * * * ,"

Local Law No. 32 passed by the City Council, concurred in by the Board of Estimate and approved by the Mayor on July 2, 1942, repealed and re-enacted article 5 of title B of chapter 36 of the Administrative Code of the City of New York. By section B36–83.0, the Local Law provided (a) that all live poultry sold

or offered for sale at the New York City live poultry terminal shall be so sold or offered only upon the basis of certain grades for live poultry which shall be promulgated by the Commissioner; (b) that such grades shall be determined by the seller and marked in accordance with the grades promulgated by the Commissioner; but if buyer and seller disagree as to grade, a live poultry grader shall determine the grade; and a fee for grading shall be paid by the party in error; (c) that a live poultry grader on his own initiative may grade live poultry where error or misrepresentation as to grading has been made; (d) that the Commissioner shall fix the fees not in excess of stated amounts; e. g., ten dollars per car and much smaller sums for baskets, et cetera; and (e) that the fees collected shall be paid to the United States Treasury where the grading service is rendered by live poultry graders employed by the United States Government.

The rules of the Commissioner of Public Markets adopted under the above section were filed with the City Clerk and thereupon become effective under New York City Charter (1938), section 885, subdivision b.

New York City Charter, section 27, provides a wide extent of legislative power in the City Council granting it in addition to all enumerated powers the power to adopt local laws applicable throughout the whole city or only to specific portions thereof, not inconsistent with the Charter or the State or Federal Constitutions or laws, for the order, protection and government of persons or property and effectuating the provisions of the Charter or other laws relating to the city.

Under the statutes referred to, we think the City Council had power to adopt the provisions of Local Law No. 32 of 1942, herein attacked.

The Commissioner contends that the purpose of the grading provisions of the law is to safeguard the rights of the public by establishing accurate and reliable grades and refers to reports of public agencies including the United States Department of Agriculture's economic survey of the live poultry industry. That survey points out that no single reform in that industry would yield so many desirable results as the adoption of grades for live poultry to preserve and sustain the character and reputation of the city in foreign markets.

The regulation is not discriminatory as granting the dealers who are not tenants unfair competitive advantages. It applies equally to all dealers similarly situated who have leased places at the terminal and accepted licenses with the knowledge

that under the Local Law the duty to pay grade fees would be imposed. The nonterminal dealers must attend at the terminal for the purpose of having live poultry inspected for health purposes and certified, as these operations are not performed elsewhere. Nonterminal dealers are also obliged to pay a fee of ten dollars for using the terminal railroad platform for unloading and inspection for each car so handled in addition to the regular inspection fee. The Commissioner contends that this ten dollars exactly balances the grading fee of ten dollars per car to which terminal tenant dealers are subject.

The Local Law does not contravene the commerce clause of the United States Constitution, as the interstate journey is over before the provisions of the Local Law and the regulations become operative upon the shipment. (*Brown* v. *Houston,* 114 U. S. 622, 632.) Such provisions are also within the power, reserved to the States, "to legislate [for] the protection of the people against fraud and deception in the sale of food products." (*Plumley* v. *Massachusetts,* 155 U. S. 461, 472.)

To sustain legislation under the police power the operation of the law must in some degree tend to prevent offense or evil, or preserve public health, morals, safety or welfare and it should appear that the interests of the public generally are served and that the means used are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. (*Ives* v. *South Buffalo Ry. Co.,* 201 N. Y. 271, 301; *Dobbins* v. *Los Angeles,* 195 U. S. 223, 236.) The test is whether the regulation is reasonable within those limits.

When poultry is received at the terminal after it is transferred into coops and moved on the stand for sale, it is labelled according to three grades: U. S. grade A, B or C. When the coop bears one of those labels such as Grade A that is a representation that the poultry in the coop belongs to the class described in the label and are U. S. Grade A chickens. Thus grade A are classified "Vigorous birds, well-fleshed, plump and full-feathered, with bright red comb and soft glossy skin. Must be soft-meated for birds of that class, and free from tears, bruises and deformities." Grade B are "Fairly well-fleshed birds, fairly well-feathered," and grade C "poorly feathered birds, poorly fleshed, but not emaciated."

Reliable grades in this important terminal do tend to safeguard the rights of the public, as proper grading has a vital relationship to the price paid for the poultry. The grades are those promulgated by the United States Department of Agriculture.

Unless merchants erroneously grade the poultry, there are no fees for grading. The United States Department of Agriculture states in its survey that under a system of indefinite and changing grades price quotations lose much of their value. We cannot say that such standards of quality are not reasonably useful in relation to accurate prices or that the use of such standards would not tend to promote equity between buyers and sellers and help assure honest trading.

The grading law in our opinion is not an unconstitutional exercise of the police power or a denial of equal protection of the laws. It is a part of a program that aims to wipe out unfair trade practices in the live poultry industry.

While there is no express limitation on the finality of a grading made by the live poultry grader, we think there is necessarily an implied limitation that the administrative act may be only for good cause shown; and if grading by a live poultry grader were shown to be arbitrary or unreasonable there doubtless would be a right to review (Civ. Prac. Act, art. 78). On this appeal however the issue of the reasonableness or the correctness of the specific grading made is not presented or passed upon. Here the sole issue is the validity of the grading law itself — the Commissioner's power to require any grading whatever and any fees therefor.

Every intendment is to be made in favor of the lawfulness of the exercise of municipal power in making regulations to promote public health, safety or welfare and, except in clear cases, courts will not interfere with the exercise of the power reposed by law in municipalities for the protection of local rights and the health and welfare of the people. (*Dobbins* v. *Los Angeles,* 195 U. S. 223, 235, 236.)

On this record we think the court should not strike down the act of the City Council as an unreasonable, arbitrary and illegal interference with the licensees of the live poultry terminal or having no rational relation to the public welfare.

The order appealed from should be reversed, with twenty dollars costs and disbursements, and the petition dismissed.

MARTIN, P. J., and CALLAHAN, J., concur; TOWNLEY and COHN, JJ., dissent.

Order reversed, with twenty dollars costs and disbursements, and the petition dismissed.