[No. 35280.  *En Banc.*  June 30, 1960.]

CECIL C. CLARK *et al., Respondents,* v. JOE DWYER, *as Director of the State Department of Agriculture, Appellant.*[1]

[1]Reported in 353 P. (2d) 941.

*The Attorney General* and *Ernest M. Furnia, Assistant,* for appellant.

*Halverson, Applegate & McDonald* and *Walter E. Weeks, Jr.,* for respondents.

*Charles W. Cone, amicus curiae.*

ROSELLINI, J.—The plaintiffs in this action, on behalf of themselves and all others similarly situated, challenge the constitutionality of chapter 230, Laws of 1959, which amends chapter 222, Laws of 1939 (RCW 15.16.080). A demurrer to the complaint was overruled, and, the defendant refusing to plead further, judgment was entered enjoining the defendant, Director of the Department of Agriculture of the State of Washington, from enforcing the provisions of this amendment.

Laws of 1939, chapter 222, § 1, p. 931, provides:

"It shall be unlawful for any person, firm, corporation, trust, association, co-operative or other business unit or device to pack, ship or sell apples unless such apples are sold, packed and graded in compliance with the general rules and regulations made, adopted and promulgated from time to time by the Director of Agriculture pursuant to section 4 of chapter 27 of the Laws of 1931 . . . Within sixty (60) days after the taking effect of this act general rules and regulations shall be adopted and promulgated defining and establishing the following grades:

"(a) Extra fancy

"(b) Fancy
"(c) C grade
"(d) Culls
"(e) Infested culls."

Section 4, chapter 27, p. 86, Laws of 1931, provided for the promulgation of grading rules only after official public hearings pursuant to such reasonable rules prescribed by the director as should insure a full, fair and impartial opportunity for all interested districts to be heard; and further provided that the grading rules should be based upon the necessities and properties as shown in the hearing, taking into consideration the commercial tonnage of said products in each district affected by said rules. This provision is now contained in RCW 15.16.010.

Chapter 230, p. 1070, Laws of 1959, reads as follows:

"The director shall adopt and promulgate rules and regulations establishing the following grades of apples: For green and yellow varieties: (1) Extra fancy, (2) fancy, (3) C grade, (4) culls, and (5) infected culls. For red and partial red varieties: (1) Extra fancy, (2) fancy, (3) culls, and (4) infected culls.

"No person shall pack, sell, or ship apples unless the same comply with the rules, regulations and grades adopted pursuant to RCW 15.16.010.

"Sec. 2. There is added to chapter 15.16 RCW a new section to read as follows:

"The director when establishing standards of color requirements for red varieties and partial red varieties of apples shall establish color standards for such varieties which are not less than the following:

"1.  Arkansas Black ...................Fifteen percent
"2.  Spitzenburg (Esopus) ...........Fifteen percent
"3.  Winesap ........................Twenty percent
"4.  King David .....................Fifteen percent
"5.  Delicious .......................Twenty percent
"6.  Staymen Winesap ...................Ten percent
"7.  Vanderpool .........................Ten percent
"8.  Black Twig .........................Ten percent
"9.  Jonathan ...........................Ten percent
"10. McIntosh ...........................Ten percent
"11. Rome ...............................Ten percent
"12. Red Sport varieties...............Twenty percent

"Whenever red sport varieties are marked as such, they shall meet the color requirements of red sport varieties."

By § 1 of this act the legislature eliminated the third, or C grade, as to red and partial red varieties of apples, while retaining it as it applies to green and yellow varieties of apples. Section 2, according to the allegations of the complaint in this action, sets minimum color requirements to which the Director of Agriculture may lower existing color requirements of the second, or "fancy," grade of red and partial red varieties of apples. Such minimum color requirements, if adopted, would lower the existing color requirements for "fancy" grade of red and partial red varieties by five per cent.

According to the allegations of the complaint, the apples which have heretofore been graded as "C grade" are as edible and healthful as those which have been graded "fancy" or "extra fancy."

Under the new grading system, two thirds of the apples formerly designated as C grade will now be classified as culls, while one third will fall into the "fancy" category. Those which are graded "culls" can, under the provisions of RCW 15.16.160, be sold or shipped only in one-bushel baskets, ring-faced and lidded, with the name "culls" appearing on the top and bottom of each container and any labels thereon in clear, legible letters at least two and one-half inches high.

It was alleged that the state of Washington produces and ships more apples than any other state in the United States; that according to the figures released by the State Department of Agriculture, there were produced in the state in the year 1957, approximately 33,000,000 bushels of apples of a value of about $73,000,000. In the year 1958, there were produced approximately 30,000,000 bushels of a value of about $75,000,000, and a similar production is expected in 1959. Of the apples produced in the state in these years, approximately ninety-five per cent were of the red and partial red varieties, and five per cent were of the green and yellow varieties.

During the 1957-58 crop year there were approximately 4,250,000 boxes of C grade apples of the red and partial red varieties shipped in interstate commerce, and for the

crop year 1958-59, there were approximately 2,500,000 boxes of C grade apples of the red and partial red varieties available for shipment. Prior to the effective date of the 1959 amendment, all but 264,708 boxes of these had been shipped in interstate commerce. The price of C grade red and partial red varieties during the crop years of 1957-58 and 1958-59, was generally $2 a box or more.

Weather conditions and low elevations are largely responsible for the production of apples of C grade of red and partial red varieties; this grade is not primarily a result of inferior farming nor growing practices. C grade apples have less color than have extra fancy and fancy grade apples. (The regulations attached to the complaint reveal that the requirements as to shape and freedom from damage are less strict in the case of C grade apples.) Generally, apples mature earlier in the season at lower elevations and in the more southerly parts of the state and have less opportunity to color; and in these areas substantially larger quantities of C grade apples of red and partial red varieties are produced than in other areas.

It is alleged that the manner heretofore allowed for shipping and marketing C grade apples of red and partial red varieties, is in no way detrimental to the public safety, health, morals, or convenience, nor does it constitute a fraud upon the public. It is further alleged that the classifying of C grade apples as culls would impair their value by prohibiting their shipment in standard boxes and requiring their shipment in bushel baskets.

The validity of the amendment was challenged on several grounds, which were consolidated for the purposes of argument in this court and set forth as follows:

"I. That said law violates the equal protection and due process clauses of the State and Federal Constitutions, being Article I., Section 3, and Section 12 of the state Constitution, and the Fourteenth Amendment to the Constitution of the United States.

"II. That said law is an improper, unwarranted and prejudicial extension of the police powers reserved to the State of Washington.

"III. That said law is an unlawful delegation of the legislative authority.

"IV. That said law violates Article I, Section 8 of the Constitution of the United States which is the commerce clause."

The question before the court is: Assuming the allegations of fact contained in the complaint to be true, do they show the 1959 amendment to be an invalid exercise of the police power?

■■■ It must be borne in mind that the state constitution is not a grant, but a restriction on the law-making power, and the power of the legislature to enact all reasonable laws is unrestrained except where, either expressly or by fair inference, it is prohibited by the state and federal constitutions. Where the validity of a statute is assailed, there is a presumption of the constitutionality of the legislative enactment, unless its repugnancy to the constitution clearly appears or is made to appear beyond a reasonable doubt. *Port of Tacoma v. Parosa,* 52 Wn. (2d) 181, 324 P. (2d) 438; *In re Bartz,* 47 Wn. (2d) 161, 287 P. (2d) 119; *Union High School Dist. No. 1 v. Taxpayers of Union High School Dist. No. 1,* 26 Wn. (2d) 1, 172 P. (2d) 591. Where possible, it will be presumed that the legislature has affirmatively determined any special facts requisite to the validity of the enactment, even though no legislative finding of fact appears in the statute. *State ex rel. Collier v. Yelle,* 9 Wn. (2d) 317, 333, 115 P. (2d) 373.

As this court said in *Gruen v. State Tax Comm.,* 35 Wn. (2d) 1, 211 P. (2d) 651, at page 7:

"It must be remembered that the legislature is the chosen representative of the people. It speaks for them. Under our constitution, the legislature passes laws and repeals laws as the sole representative of the people. . . ."

■■■ While the plaintiffs do not question the validity of chapter 222, Laws of 1939, providing for the promulgation of rules establishing grades of apples, they urge that the 1959 amendment, eliminating one of these grades in the case of red and partial red varieties, is not a proper exercise of the police power because it was not enacted to protect

the public health or prevent fraud. But, the police power is not as limited as the plaintiffs contend. It has become firmly established that the police power of the state extends not only to the preservation of the public health, safety, and morals, but also to the preservation and promotion of the public welfare. *State v. Sears,* 4 Wn. (2d) 200, 103 P. (2d) 337. As was said in *Shea v. Olson,* 185 Wash. 143, 53 P. (2d) 615, 111 A. L. R. 998:

"However difficult it may be to give a precise or satisfactory definition of 'police power,' there is no doubt that the state, in the exercise of such power, may prescribe laws tending to promote the health, peace, morals, education, good order and welfare of the people. Police power is an attribute of sovereignty, an essential element of the power to govern, and a function that cannot be surrendered. It exists without express declaration, and the only limitation upon it is that it must reasonably tend to *correct some evil or promote some interest of the state,* and not violate any direct or positive mandate of the constitution." (Italics ours.)

In *Sligh v. Kirkwood,* 237 U. S. 52, 59 L. Ed. 835, 35 S. Ct. 501, the Supreme Court of the United States was asked to declare unconstitutional a law, enacted by the legislature of the state of Florida, forbidding the shipment of citrus fruits which were immature or otherwise unfit for consumption. It was the contention of the petitioner that the act constituted an undue burden on interstate commerce, and could not be justified as a proper exercise of the police power because it was not calculated to protect the health of the people of Florida. The supreme court held that the act was within the police power of the state, to protect the reputation of one of its great industries, saying:

". . . The police power, in its broadest sense, includes all legislation and almost every function of civil government. *Barbier v. Connolly,* 113 U. S. 27. It is not subject to definite limitations, but is coextensive with the necessities of the case and the safeguards of public interest. *Camfield v. United States,* 167 U. S. 518, 524. It embraces regulations designed to promote public convenience or the general prosperity or welfare, as well as those specifically intended to promote the public safety or the public health.

*Chicago & C. Railway v. Drainage Commissioners,* 200 U. S. 561, 592.

" . . .

" . . . The protection of the State's reputation in foreign markets, with the consequent beneficial effect upon a great home industry, may have been within the legislative intent, and it certainly could not be said that this legislation has no reasonable relation to the accomplishment of that purpose."

We are told by *amicus curiae* and by the respondents in this case that the 1931 law was amended as a result of a study of the difficulties with which the apple industry has been faced in recent years in marketing its products in the east. While this fact does not appear in the pleadings before the court, it is not alleged in the complaint that the act was passed for no legitimate purpose, and, as we have said, the presumption is that a state of facts existed on which the legislation could properly be based. The mere fact that the act was not necessary to promote the public health, therefore, is not sufficient to render it invalid.

The plaintiffs argue that the act denies them the right to market their "C grade" apples, but we do not so understand it. It merely changes a system of grading which had previously been established by the legislature. As a result of this change, some apples which were previously graded for marketing in boxes must now be packed in baskets, and on the other hand, some apples which previously were "C grade" may now be marked "fancy." The wisdom of this change is a matter within the province of the legislature, not of this court, and its purpose, which we assume to be for the protection of the reputation of Washington apples and the betterment of the industry, and as a result the general welfare, is one which could properly be served in the exercise of the police power. Regulations of this type have been held valid in numerous cases, among them *Sligh v. Kirkwood, supra, Detweiler v. Welch,* 46 F. (2d) 75, 73 A. L. R. 1440, *Nebbia v. New York,* 291 U. S. 502, 78 L. Ed. 940, 54 S. Ct. 505, 89 A. L. R. 1469, *Marshall v. Department of Agriculture,* 44 Idaho 440, 258 Pac. 171, *In*

*re Fujii,* 189 Cal. 55, 207 Pac. 537, and *Avon Western Corp. v. Woolley,* 42 N. Y. S. (2d) 690, 266 App. Div. 529. In cases holding acts of this type invalid, there has generally been a finding that the particular law was unreasonable or the court has adopted a narrow concept of the police power.

In *Inman v. Sandvig,* 170 Wash. 112, 15 P. (2d) 696, relied upon by the plaintiffs, this court held that a rule adopted by the Director of Agriculture providing that third grade apples should not be wrapped nor packed nor lidded in a standard apple box, was unreasonably discriminatory and violated the due process clause and the constitutional prohibition against the granting of special privileges and immunities. The decision resulted from a finding that the ruling was not based upon considerations of public health. In so far as the opinion reveals, it was not argued that the provision was designed to further the economic well being of the industry. The case was before the court after a trial on the merits, and the only argument advanced in justification of the ruling was that it would prevent deception— a contention which the court found had no basis in fact. The principles governing the judicial approach to laws passed in the exercise of the police power, were not discussed; and the question presented in this case was not decided. The decision of that case, therefore, does not determine the decision in this.

■ It is admitted that the effect of the amendment is to impose upon the plaintiffs and other growers of what were formerly C grade apples, packing requirements which will adversely affect the market value of their produce. However, this in itself does not constitute a deprivation of property without due process of law. This court has stated the applicable principle in the leading case of *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101 (upholding the constitutionality of the workmen's compensation act of 1911) in these words, p. 195:

"If . . . the act in controversy has a reasonable relation to the protection of the public health, morals, safety or welfare, it is not to be set aside because it may incidentally deprive some person of his property without fault

or take the property of one person to pay the obligations of another. To be fatally defective in these respects, the regulation must be so utterly unreasonable and so extravagant in nature and purpose as to capriciously interfere with and destroy private rights."

The plaintiffs do not question the power of the legislature to establish grades of edible apples and to base the gradations primarily on color. They do not challenge the constitutionality of the 1939 act establishing such grades. They question only the right of the legislature to change such grades, once they have been established, if such a change operates to reduce the market value of their produce. If the legislature can regulate the marketing of these products at all (and, as we have said, it can do so where it finds that it is in the public interest to protect the reputation and welfare of the industry), it can refine those regulations or change them to further the legitimate purposes of the law. If such changes incidentally affect adversely the market value of some of the produce in question, that is no more an objection now than it was when the regulatory law was initially enacted if in the judgment of the legislature, the best interests of the industry as a whole will be served. Nowhere in the complaint do we find an allegation that the 1959 amendment was not enacted for any legitimate purpose within the confines of the police power or that it was not reasonably calculated to effect that purpose.

But it is urged that the law is arbitrary and discriminatory because it has eliminated the C grade in the case of red and partial red varieties, but has not done so in the case of the yellow and green varieties.

Article I, § 12 of the state constitution and the fourteenth amendment to the Federal constitution, prohibiting special privileges and immunities and guaranteeing equal protection of the laws, require that class legislation must apply alike to all persons within a class, and reasonable ground must exist for making a distinction between those within, and those without, a designated class. Within the limits of these restrictive rules, the legislature has a

wide measure of discretion, and its determination, when expressed in statutory enactment, cannot be successfully attacked unless it is manifestly arbitrary, unreasonable, inequitable, and unjust. *Faxe v. Grandview,* 48 Wn. (2d) 342, 294 P. (2d) 402; *Bauer v. State,* 7 Wn. (2d) 476, 110 P. (2d) 154; *State ex rel. Bacich v. Huse,* 187 Wash. 75, 59 P. (2d) 1101; *Northern Cedar Co. v. French,* 131 Wash. 394, 230 Pac. 837. It is universally held that courts will not look too nicely into legislative acts to determine whether a reasonable distinction exists. *Faxe v. Grandview, supra; Bauer v. State, supra; Northern Cedar Co. v. French, supra; Garretson Co. v. Robinson,* 178 Wash. 601, 35 P. (2d) 504.

■ The legislature has chosen to make a distinction between these products on the basis of color. The plaintiffs do not deny the propriety of such distinctions in the grading of apples. Unquestionably, the law applies alike to all members of the same class. The growers of red and partial red varieties are in one class and the growers of yellow and green varieties are in the other. The latter varieties comprise only five per cent of the total apples grown and marketed in this state. It may well be that the legislature found that the marketing of apples designated as C grade in standard Washington apple boxes had no adverse effect on the market value and reputation of the fancy grades of yellow and green varieties and, therefore, no change in the grading system for these apples was needed. The legislature may have found it to be a fact that color differences in the yellow and green varieties of apples are much less pronounced than in the red and partial red varieties, and have little significance in the mind of the purchaser.

In any event, there can be no doubt that a distinction exists, and the complaint does not show that it is an arbitrary or unreasonable distinction. The allegations, therefore, do not show that the act denies the plaintiffs the equal protection of the laws nor grants to others special privileges and immunities.

■ The plaintiffs say that the amendment constitutes an unlawful delegation of legislative authority. The question of delegation of legislative authority was exam-

ined at length by this court in the case of *Senior Citizens League, Inc. v. Department of Social Security,* 38 Wn. (2d) 142, 228 P. (2d) 478. At page 152, this court said:

"The constitutional prohibition against the delegation of legislative power does not preclude the delegation to administrative officers or boards of the power to determine some fact or state of things upon which the application of the law is made to depend, provided the law enunciates a standard by which such officers or boards must be guided. *State ex rel. Chicago, M. & St. P. R. Co. v. Public Service Commission,* 94 Wash. 274, 162 Pac. 523; *State v. Bayles,* 121 Wash. 215, 209 Pac. 20; *Royer v. Public Utility Dist. No. 1,* 186 Wash. 142, 56 P. (2d) 1302; *State ex rel. Washington Toll Bridge Authority v. Yelle,* 195 Wash. 636, 82 P. (2d) 120; *Morgan v. Department of Social Security,* 14 Wn. (2d) 156, 127 P. (2d) 686.

"The legislature may also, under proper circumstances, delegate to administrative officers and boards, authority to promulgate rules and regulations to carry out an express legislative purpose, or to effect the operation and enforcement of a law. *Vail v. Seaborg,* 120 Wash. 126, 207 Pac. 15; *State v. Nelson,* 146 Wash. 17, 261 Pac. 796; *In re Gifford,* 192 Wash. 562, 74 P. (2d) 475, 114 A. L. R. 348; *Home Owners' Loan Corp. v. Rawson,* 196 Wash. 548, 83 P. (2d) 765; *State v. Miles,* 5 Wn. (2d) 322, 105 P. (2d) 51."

Provision is made in RCW 15.16.010 for hearings to determine the facts on the basis of which the characteristics of the grades provided for in the amendment shall be determined. The legislature has provided a minimum color standard to guide the Director of Agriculture. The determination of the exact characteristics which should be assigned to each grade could be made intelligently only after an investigation of pertinent facts and is a matter which the legislature properly left to the administrative agency which was best equipped to make that determination. The complaint shows no unlawful delegation of legislative power.

It is contended that the act imposes an undue burden upon interstate commerce; but it is well settled that, while Congress has the exclusive power to regulate interstate commerce, in the absence of congressional action

in conflict therewith, a state in the exercise of the police power may adopt legislation designed to promote the public welfare; and, to that end, may make regulations relative to the disposal of the products of the state even though such regulations may incidentally or indirectly affect interstate shipments. *Minnesota Rate Cases*, 230 U. S. 352, 57 L. Ed. 1511, 33 S. Ct. 729; *Sligh v. Kirkwood, supra; Detweiler v. Welch, supra.*

The complaint having failed to state facts sufficient to show that Laws of 1959, chapter 230, contravene some provision of the state or federal constitution, the demurrer should have been sustained and the action dismissed.

It is so ordered.

WEAVER, C. J., MALLERY, DONWORTH, FINLEY, OTT, and HUNTER, JJ., concur.

FINLEY, J. (concurring) — I have signed the majority opinion, concurring in the views expressed and the result reached therein with the following observation:

I agree with the holding of this court in *Inman v. Sandvig* (1932), 170 Wash. 112, 15 P. (2d) 696, if, as I believe is proper, that decision is limited to a holding that, *solely as a labeling device,* the relegation of certain grades of apples to inconvenient and uneconomical types of containers is constitutionally unjustifiable. However, to the extent that the *Inman* case has any broader implications, conflicting with the views expressed by the majority in the instant case, I believe the *Inman* case should be overruled.

FOSTER, J. (concurring in the result)—While I concur in the court's disposition of this appeal, in my view *Inman v. Sandvig,* 170 Wash. 112, 15 P. (2d) 696, was wrongly decided, cannot be distinguished and should be expressly overruled.

HILL, J. (dissenting)—In my opinion, the question in this case was decided in *Inman v. Sandvig,* 170 Wash. 112, 15 P. (2d) 696, contrary to the contention of the appellant. In that case, the illegality of the rules adopted by the Director of Agriculture was challenged. Prior to August 1,

1932, extra fancy or first grade, fancy or second grade, and C grade or third grade apples could be lawfully sold and marketed in the standard apple box of the state of Washington. Pursuant to the rules and regulations of the Director of Agriculture, on August 1, 1932, the director adopted rules which prohibited the wrapping, packing, and lidding of C grade apples in the standard apple box of the state of Washington.

The evidence was that the standard apple box of determined dimensions was established in 1903, by statutory law; that it had been the custom for many years to pack and market apples grown in this state in a standard apple box; and that the extra fancy, fancy, and C grade apples were marketed by the use of this container. The evidence also disclosed that C grade apples, as defined by the rules prior to 1932, were not detrimental to public health in their consumption as food, and were as free from fault as were the C grade apples defined by the rules adopted August 1, 1932; that a very large quantity of apples produced in this state each year were of the C grade, as defined by the old rule; and that there was no necessity for the rule based upon consideration of health.

This court stated, page 118:

"We are of the opinion that the rule adopted and promulgated by the director of agriculture on August 1, 1932, with reference to third grade apples, in so far as that rule provides that third grade apples 'shall not be wrapped nor packed nor lidded in a standard apple box of the state of Washington,' is unreasonably discriminatory as against third grade apples in favor of first and second grade apples, and in violation of Art. I, § 3, of our state constitution, providing that 'no person shall be deprived of life, liberty, or property without due process of law,' and Art. I, § 12, of our state constitution, providing that

" 'No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations.'

"The word 'law,' as used in this section, manifestly includes a rule made by any administrative authority, as well as a law made by direct legislative authority. Our conclusion

seems to us so plainly correct as to render it unnecessary to call for any extended review or citation of the many court decisions and texts supporting it. The controlling principles are well stated in general terms in the text of 6 R. C. L. 196 as follows:

" 'The constitutional guaranty that no person shall be deprived of his property without due process of law may be violated without the physical taking of property for public or private use. Its capability for enjoyment and adaptibility to some use are essential characteristics and attributes without which property cannot be conceived. Hence a law is considered as being a deprivation of property within the meaning of this constitutional guaranty if it deprives an owner of one of its essential attributes, or destroys its value, or restricts or interrupts its common, necessary or profitable use, or hampers the owner in the application of it to the purposes of trade, or imposes conditions upon the right to hold or use it, and thereby seriously impairs its value. These general principles apply not only to statutes enacted by the legislature but to the action of executive officers generally.' "

I am unable to distinguish *Inman v. Sandvig, supra,* from the instant case and feel that the court is bound by its holding.

---

August 19, 1960. Petition for rehearing denied.